DEL POSING, d/b/a Del's Pest Control, Plaintiff-Appellee, v. MERIT IN-SURANCE COMPANY, Defendant-Appellant (James Forrester *et al.*, Defendants).

Third District    No. 3—93—0640

Opinion filed February 25, 1994.

Appeal from the Circuit Court of Kankakee County; the Hon. Patrick M. Burns, Judge, presiding.

Stern & Rotheiser, of Chicago (Robert D. Shearer, of counsel), for appellant.

Blanke, Norden, Barmann, Kramer & Bohlen, P.C., of Kankakee (Christopher W. Bohlen, of counsel), for appellee.

JUSTICE BARRY delivered the opinion of the court:

Plaintiff, Del Posing, doing business as Del's Pest Control (Posing), brought an action in the circuit court of Kankakee County for declaratory judgment against Merit Insurance Company (Merit) and the owners of three buildings for which plaintiff had conducted termite inspections and/or performed pest control services, seeking to have the court determine plaintiff's liability insurance coverage under a policy issued by Merit. The case was heard and taken under advisement. On July 16, 1993, the court entered judgment for plaintiff and ordered Merit to reimburse plaintiff for defense costs incurred theretofore, to assume plaintiff's defense in suits brought by the property owners and to indemnify plaintiff in the event judgment was entered against him in those suits. Merit appeals.

Merit claims that the trial court's ruling was erroneous in four respects: (1) that the court erroneously determined that the provisions, definitions and exclusions in Merit's comprehensive general liability policy were not clear and unambiguous; (2) that the court erroneously concluded that the property owners' claims were not excluded from coverage as intangible economic losses; (3) that the court erroneously concluded that the policy's exclusion for intentional acts of the insured did not preclude coverage for the damages claimed in the underlying lawsuits; and (4) that the court's determination of Merit's duty to indemnify plaintiff in the property owners' suits was premature.

According to the record on appeal, plaintiff purchased a comprehensive general liability (CGL) policy issued by Merit for his extermination business through the John W. Slater Insurance Agency in August of 1986. Plaintiff periodically renewed the policy, paying yearly premiums in excess of $3,000, through August 1989. Plaintiff's renewal policy for the period August 11, 1987, to August 11, 1988, was admitted into evidence as plaintiff's exhibit 1.

By its terms, the policy's property liability coverage is limited to $50,000 per occurrence. Under "Description of Hazards," the policy describes plaintiff's business as "exterminators—including termite control—excluding the use of gas of any kind including completed operations." The preprinted policy provides the following definitions relevant to this appeal: " 'incidental contract' means any written 1) lease of premises, 2) easement agreement, except in connection with construction or demolition operations on or adjacent to a railroad, 3) undertaking to indemnify a municipality required by municipal ordinance, except in connection with work for the municipality, 4) sidetrack agreement, or 5) elevator maintenance agreement; *** 'occurrence' means an accident, including continuous or repeated exposure to conditions, neither expected nor intended from the standpoint of the insured which results in bodily injury or property damage; *** 'property damage' means 1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or 2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period." Under "exclusions," the policy provides, "This insurance does not apply: a) to liability assumed by the insured under any contract or agreement except an incidental contract; but with respect to bodily injury or property damage occurring while work performed by the named insured is in progress, this exclusion does not apply to a warranty that such work will be done in a workmanlike manner." Appended to the policy is Merit's form "ME—36 (4-87)" endorsement modifying the policy in the following relevant respect: "2) Exclusion (a) is deleted and replaced by: a) liability assumed by the insured under any contract or agreement except an incidental contract."

The record also contains copies of complaints filed in the circuit court of Kankakee County by the three property owners, which plaintiff forwarded to Merit. The first was filed in seven counts by Dean and Dana Goselin on January 20, 1988, against Posing and the seller of the subject residential real estate, Donna Wood. Count VII, the only one against Posing, charges that Posing "conducted his [termite] inspection in a negligent manner," that "[i]t was the negligently rendered opinion upon which [the Goselins] proceeded to purchase the property," and that, as a result, the Goselins "purchased a house with a diminished value which requires great inconveniences and costs to repair with said damages amounting therefrom being in excess of $15,000.00."

The second complaint was filed by Morning Star Missionary

Baptist Church on October 17, 1988, in two counts and subsequently amended to add count III. The complaint, as amended, charges in count I that Posing and the church entered into a contractual agreement for the extermination of subterranean termites on the church's premises in May 1984; that Posing "failed to fulfill the contract *** in that he failed to apply the necessary additional treatment to the premises as required by the written Agreement"; and that "as a direct consequence of [Posing's] breach of said written Agreement, the building on the [church's] premises was infested with termites and [the church] has been damaged in the amount of *** $46,000.00, said sum representing the cost of repairing the structural damages to the walls, floorboards and supporting arc beams of said building." Count II charges that Posing breached an express warranty "that subterranean termites would be controlled on the [church's] premises during the period of the Agreement." Count III charges negligence in that Posing "failed to properly exterminate termites on the subject premises; [and] *** failed to inspect and notify the [church] of the infestation of termites in a timely manner."

The third complaint was filed by James Forrester in six counts on March 16, 1990, against Posing and Sis Spurger Realty and Leda Tatro, the real estate broker and seller, respectively, of residential property purchased by Forrester. Counts I through V pertain to Posing. In count I, Forrester charges that all named defendants "failed to use due care in obtaining and communicating information regarding the condition of the *** property," and that Forrester "suffered damages, proximately caused by the Defendants' negligent misrepresentation, in excess of $50,000.00, for necessary repairs discovered in May, 1989, in an amount in excess of the purchase price." In count II Forrester complains that the several defendants made misrepresentations with knowledge of their falsity, and he claims punitive damages of $100,000. In count III, Forrester complains that the several defendants "intentionally concealed material facts regarding the condition of the property" and made other material and untrue statements knowing them untrue or "in culpable ignorance of the truth or falsity of the statements," upon which Forrester detrimentally relied, and again claims both compensatory and punitive damages. Counts IV and V complain that Sis Spurger and Posing violated section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1991, ch. 121½, par. 261) and section 1 of the Uniform Deceptive Trade Practices Act (Ill. Rev. Stat. 1991, ch. 121½, par. 311).

Plaintiff's exhibits 2, 3 and 4 are cover letters from Merit returning to plaintiff the complaints filed by the Goselins, Forrester

and the Morning Star Baptist Church, respectively, and refusing to defend the actions under plaintiff's policy of insurance. In the Goselin case the letter recites, "There is no allegation in the complaint that the property damage was caused by an occurrence or accident but simply alleges that the damage was already present and you negligently failed to discover it. There is no allegation that your negligence caused physical injury to tangible property during the policy period." In the Morning Star Baptist Church case the letter from Merit states, *inter alia*, "Your policy with this company contains following [*sic*] exclusion, 'this insurance does not apply to liability assumed by the insured under any contract or agreement except an incidental contract.' The contract in question does not fall under the definition of 'incidental contract.' " And, in the Forrester case Merit's letter recites, "It is our position that there is no occurrence or accident complained of in the complaint. In addition, any intentional acts complained of are not covered. It is also our position that there is no allegation of property damage because there is no allegation of physical injury to or destruction of tangible property as a result of any occurrence. *** The payment of punitive damages is excluded by endorsement ME—36."

The standard for determining an insurer's duty to defend requires our review of the underlying complaints and our construction of the policy of insurance. (*United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.* (1991), 144 Ill. 2d 64, 73, 578 N.E.2d 926, 930.) The law applicable to our review was cogently expressed by Justice Bilandic in *Wilkin*:

> "If the underlying complaints allege facts within or *potentially* within policy coverage, the insurer is obliged to defend its insured even if the allegations are groundless, false, or fraudulent. (*Thornton v. Paul* (1978), 74 Ill. 2d 132[, 384 N.E.2d 335].) An insurer may not justifiably refuse to defend an action against its insured unless it is *clear* from the face of the underlying complaints that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage. (*Conway v. Country Casualty Insurance Co.* (1982), 92 Ill. 2d 388[, 442 N.E.2d 245].) Moreover, if the underlying complaints allege several theories of recovery against the insured, the duty to defend arises even if only one such theory is within the potential coverage of the policy. *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187[, 355 N.E.2d 24].
>
> The underlying complaints and the insurance policies must be liberally construed in favor of the insured. Where a policy provision is clear and unambiguous, its language must be taken in its 'plain, ordinary and popular sense.' (*Hartford Accident &*

*Indemnity Co. v. Case Foundation Co.* (1973), 10 Ill. App. 3d 115, 121[, 294 N.E.2d 7].) A provision is ambiguous if it is subject to more than one reasonable interpretation. (*Marathon Plastics, Inc. v. International Insurance Co.* (1987), 161 Ill. App. 3d 452, 464[, 514 N.E.2d 479].) All doubts and ambiguities must be resolved in favor of the insured. *Northbrook Property & Casualty Insurance Co. v. United States Fidelity & Guaranty Co.* (1986), 150 Ill. App. 3d 479[, 501 N.E.2d 817]; *Trovillion v. United States Fidelity & Guaranty Co.* (1985), 130 Ill. App. 3d 694[, 474 N.E.2d 953]." (Emphasis in original.) 144 Ill. 2d at 73-74.

■ Initially, Merit contends that the trial court erred in finding that the CGL policy here at issue, its definitions, endorsements and exclusions were not clear and unambiguous. While it may be true that terms of the policy, its coverages and exceptions, are clear and unambiguous to a sophisticated reader of insurance policies, we believe that the public policy of this State, as demonstrated by the court's opinion in *Wilkin*, requires that insurance contracts be construed and enforced to accord with the objectively reasonable expectations of the *insured.* (See, *e.g., Morton International, Inc. v. General Accident Insurance Co.* (1993), 134 N.J. 1, 27, 629 A.2d 831, 846 (applying "reasonable expectation" test in context of pollution-exclusion clause of CGL policy).) In our opinion, the several definitions and exclusions and exceptions within exclusions cross-referenced throughout the policy in this case render the determination of its coverage virtually indecipherable to an average reader. Moreover, we believe that it would be quite a shock to any insured in Posing's position to learn that the CGL insurance he has paid over $3,000 a year for provides no coverage and no duty to defend against the underlying suits in this case. Accordingly, we find no error in the trial court's conclusion that the policy did not clearly and unambiguously exculpate Merit from defending Posing.

Next, as in *Wilkin*, we are asked to determine whether, given applicable rules of construction, the underlying complaints allege potentially covered "property damage" caused by an "occurrence" that is not excluded by the subject CGL insurance policy.

In *Wilkin*, Wilkin was a small, family operation in the business of subcontracting for the installation of insulation products in buildings under construction. During part of the period covered by various CGL policies, Wilkin used a fireproofing product containing asbestos. When the health hazards of asbestos fibers were exposed and governmental regulations were enacted mandating that public building owners take corrective measures, class action lawsuits were spawned to recover damages from the "asbestos industry." As a member of a 60-defendant

named class, Wilkin turned to its CGL insurers and sought their defense within the limits of the policies. One of the insurers, USF&G, denied all coverage, refused to defend and sued for declaratory judgment. Other insurers intervened, seeking the same declarations as USF&G, *i.e.*, that they had no duty to defend or indemnify in the underlying lawsuits. The trial court granted summary judgment for the insurers, holding that their various exclusions precluded coverage and the duty to defend. On appeal, the appellate court reversed, holding that the underlying suits sufficiently alleged "property damage" caused by an "occurrence" to fall within the policies' coverage. Our supreme court affirmed that holding.

In *Wilkin*, the court construed the following standard form insurance policy coverage definitions:

> Property damage—"physical injury to or destruction of tangible property, which occurs during the policy period, including the loss of use thereof at any time resulting therefrom"; and
> Occurrence—"an accident, including continuous or repeated exposure to conditions which result in property damage *** neither expected nor intended from the standpoint of the insured." (144 Ill. 2d at 75, 76, 578 N.E.2d at 931, 932.)

As here, the insurers argued that the injuries alleged by the public building owners in the underlying suits were not physical damage to tangible property, but only intangible economic loss measured by diminution in market values of the buildings. They further posited, as here, that the contamination complained of was not an "occurrence" because there was no event or accident giving rise to property damage, and the damage was allegedly expected or intended by the insured. The supreme court rejected the former argument on the ground that it was illogical. Asbestos contamination of a building and its contents, requiring corrective measures, was damage to the building—ergo, by logical extension, physical injury to tangible property. Similarly, the court determined that, inasmuch as an "accident" included "continuous or repeated exposure to conditions which result in property damage," the asbestos contamination by continuous release of fibers qualified as such and was, therefore, an occurrence within the policy definition. 144 Ill. 2d at 77, 578 N.E.2d at 932.

Finally, the *Wilkin* court rejected the insurers' argument that the damages complained of by the building owners were not within the coverage of the CGL policies because of allegations that Wilkin intentionally installed the insulation with knowledge of potential health hazards. The court repeated that the duty to defend arises "if *any* theory of recovery alleges coverage." Since each of the underlying complaints included a negligence count alleging Wilkin "knew or

should have known" of the potential health hazard posed by the material he used, the court liberally construed the policies and the complaints and concluded that they did not allege Wilkin "expected or intended to contaminate" the property. Ergo, coverage and the insurers' duty to defend could not be denied on this basis.

■ In this case Merit argues that its policy's definitions of "property damage" and "occurrence" are clear and unambiguous and justify its denials of coverage and the duty to defend in the complaints brought against Posing. In our opinion, the court's findings in *Wilkin* are dispositive of Merit's arguments. Factually, each of the underlying complaints alleges "property damage" in that the subject real estate was partially destroyed by pest infestation allegedly resulting from Posing's faulty inspection or treatment. As in *Wilkin*, we find that this damage is a tangible, physical injury to property within the policy's definition of "property damage." Likewise, insofar as the policy includes as an "occurrence" or "accident" "continuous or repeated exposure to conditions resulting in property damage," we find that the pest infestation complained of in the underlying complaints constitutes an "occurrence" within the coverage of the policy.

Further, we find that *Wilkin* controls to the extent that it liberally construed allegations of negligence in favor of the insured in determining that the insured's intentional performance of business pursuits (here, termite inspections and pest control) does not exculpate the insurer from its duty to defend against the alleged consequences of the insured's negligence. In this case, as in *Wilkin*, at least one count in each of the underlying lawsuits alleges negligent conduct without alleging that Posing "expected" or "intended" the pest infestation complained of. In our opinion, the bases for liability recited by the plaintiffs in the underlying lawsuits are precisely the kinds of "occurrences" Posing expected to be insured against when he purchased and periodically renewed the CGL policy for his pest control business.

■ Next, we do not read Merit's "ME—36" endorsement, excluding from coverage "liability assumed by the insured under any contract except an incidental contract," as broadly as Merit urges in this appeal. The fact that Posing contracted with his clients for his services does not convert his service contracts into general guarantees or assumptions of liability for damages caused by pest infestation. In fact, a copy of Posing's agreement with Morning Star Baptist Church specifically disclaims Posing's assumption of liability for such damages. Under the heading, "Subterranean Termite Control Guaranty," in capital letters is the following proviso: "The purchaser further understands that Del Posing's liability under this agreement is limited to retreatment only and in no way, implied or otherwise, is responsible for damages or re-

pairs to the structure or contents." Accordingly, we affirm the trial court's findings that the terms of the policy in question cannot be construed so as to shield Merit from its duty to defend Posing in the three lawsuits in question.

    ■ In its final argument to this court, Merit points out that, as in *Wilkin*, since the insured's liability has not been determined in the underlying lawsuits, the circuit court's determination of Merit's duty to indemnify is premature. (See *Wilkin*, 144 Ill. 2d at 73, 578 N.E.2d at 930, citing *Maryland Casualty Co. v. Chicago & North Western Transportation Co.* (1984), 126 Ill. App. 3d 150, 466 N.E.2d 1091.) We agree. As explained in *Maryland Casualty*, "an untimely determination in the declaratory judgment action could subsequently prejudice a party in the underlying action through application of collateral estoppel. In the case *sub judice*, circumstances could arise which would permit [the insurer] to contest its duty to pay." (*Maryland Casualty*, 126 Ill. App. 3d at 157, 466 N.E.2d at 1096.) Accordingly, to avoid prejudice to the insurer, we reverse that portion of the trial court's judgment ordering Merit to indemnify its insured in the event judgments are entered against Posing.

    For the foregoing reasons, we affirm the judgment of the circuit court of Kankakee County as to Merit's duty to defend and reimburse Posing for defense costs incurred in the underlying lawsuits. We reverse the judgment of the court to the extent that it prematurely determined Merit's duty to indemnify.

    Affirmed in part; reversed in part and remanded.

    SLATER, P.J., and BRESLIN, J., concur.