SECOND DIVISION

December 23, 2003

 No. 1-02-3550

ALLSTATE INSURANCE COMPANY, 

Plaintiff-Appellee,

v.

JOHN J. LANE and JOAN M. LANE,

Defendants-Appellants

(Bruce C. Stern and Silvia M. Stern,

Defendants).

)

)

)

)

)

)

)

)

)

)

)

)

)

Appeal from

the Circuit Court

of Cook County

No. 01 CH 12491

Honorable

Richard A. Siebel,

Judge Presiding.

JUSTICE CAHILL delivered the opinion of the court:

Defendants John J. Lane and Joan M. Lane appeal from a summary judgment in favor of plaintiff Allstate Insurance Company.  The trial court concluded that Allstate had no obligation to defend or indemnify the Lanes in a lawsuit brought by Bruce C. Stern and Silvia M. Stern.  The Sterns sought rescission of a real estate contract and damages because the home the Sterns purchased from the Lanes had been damaged by extensive water infiltration before the closing.  We affirm.

The facts are undisputed.  On June 4, 1999, the Sterns entered into a real estate contract to purchase the Lanes' house in Oak Park, Illinois.  The Lanes signed a residential real property disclosure report, stating they were not aware of recurring leaks in the basement, material defects in the walls or floors, leaks or material defects in the roof, ceiling or chimney or material defects in the plumbing.  The sale was closed on August 2, 1999, and the Sterns took possession of the house on August 4, 1999.  They soon discovered defects in the property, including leaks, water damage and sewer odors.  

The Sterns filed their amended complaint, seeking rescission of the sales contract or restitution under the theories of fraudulent misrepresentation, negligent misrepresentation, violation of the Residential Real Property Disclosure Act (765 ILCS 77/1 
et seq. (
West 1998)) or mutual mistake of fact.  The Sterns also sued the real estate broker and agent for fraudulent or negligent misrepresentation and breach of fiduciary duty for failure to disclose known material defects in the property.  The Sterns alleged that between 1984 and 1995, the Lanes replaced most of the windows in the house, but because of improper installation, the windows leaked and rainwater entered the house.  The Sterns claimed that the Lanes knew of the water infiltration by the mid-1990s when they discovered damaged plaster, bubbling in the wallpaper and puddling in the basement during heavy rains.  The sewer pipes cracked and the walls and floors lost structural support when the house shifted.  As a result of the infiltration, the wooden studs and face boards rotted, the insulation became water-logged and the plaster walls softened.  The Sterns alleged in their complaint that raw sewage leaked under the house and through the foundation of the basement.  The defects forced the Sterns to leave the house.  

The Sterns alleged that the Lanes knew of the defects and concealed them: 

" John Lane admitted to having discovered the water damage prior to the closing and advised Tony Iwerson [the real estate agent] of the water damage.  John Lane admitted that the Lanes had asked Iwerson on July 10, 1999[,] what their responsibility was with respect to the anticipated sale of the [p]roperty, and that Iwerson had told the Lanes not to advise the Sterns of the leaking and water damage."

The complaint states that despite several contacts between the Sterns, Iwerson and the Lanes between July 10, 1999, and the closing on August 2, 1999, neither Iwerson nor the Lanes mentioned leaking or water damage to the Sterns.

The Lanes' Allstate family liability insurance policy provided: "Allstate will pay damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an occurrence to which this policy applies, and is covered by this part of the policy."  The Lanes tendered to Allstate the defense of the underlying action.  Allstate refused to defend the Lanes and filed a complaint for a declaratory judgment, arguing that the Lanes were not covered because the Sterns did not allege that the Lanes' conduct resulted in property damage caused by an occurrence as defined in the policy.  The parties then filed cross-motions for summary judgment.  The Lanes argued that Allstate should defend them in the Sterns' suit for negligent misrepresentation because the Lanes' failure to ascertain the existence and extent of the damage was an occurrence resulting in property damage.  Allstate argued that the Sterns had alleged the breach of a real estate contract and economic loss caused by the Lanes' failure to disclose material defects, not "property damage" caused by an "occurrence." 

Allstate further argued that it owed no duty to defend or indemnify the Lanes because the underlying action arose from a contract, intentional acts or a third-party property damage claim, all of which were excluded under the policy.

The trial court concluded that there was no "occurrence" resulting in "bodily injury" or "property damage" as defined in the policy and granted Allstate's motion for summary judgment.  The Lanes appeal, arguing that the Sterns' negligent misrepresentation complaint sufficiently alleged an occurrence as defined in the policy.

We review 
de novo
 appeals from summary judgment.  
Atlantic Mutual Insurance Co. v. American Academy of Orthopaedic Surgeons
, 315 Ill. App. 3d 552, 559, 734 N.E.2d 50 (2000).  Appeals raising questions of law on the provisions of insurance policies also are subject to 
de novo
 review.  
Travelers Insurance Co. v. Eljer Manufacturing, Inc.
, 197 Ill. 2d 278, 292, 757 N.E.2d 481 (2001).  Summary judgment "is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt."  
Outboard Marine Corp. v. Liberty Mutual Insurance Co.
, 154 Ill. 2d 90, 102, 607 N.E.2d 1204 (1992).  In deciding whether a summary judgment ruling is correct, we construe all evidence strictly against the moving party and liberally in favor of the nonmoving party.  
Atlantic Mutual
, 315 Ill. App. 3d at 559. Where, as here, the pleadings, depositions and affidavits show no genuine issue of material fact, the moving party is entitled to judgment as a matter of law.  735 ILCS 5/2-1005(c) (West 2000);  
Atlantic Mutual
, 315 Ill  App. 3d at 559.  

An insurer's duty to defend arises if the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage.  
Outboard Marine
 154 Ill. 2d at 108.  An insurer can refuse to defend its insured only if  it is clear from the face of the underlying complaint that the coverage does not extend to the allegations.  
Outboard Marine
 154 Ill. 2d at 108.  The duty to defend is much broader than the duty to indemnify.  
Outboard Marine
, 154 Ill. 2d at 125.  To determine whether an insurer has a duty to defend, a court compares the allegations in the underlying complaint with the relevant coverage provisions of the insurance policy.  
Guillen v. Potomac Insurance Co. of Illinois
, 203 Ill. 2d 141,150, 785 N.E.2d 1 (2003).  "If the facts alleged in the underlying complaint fall within or potentially fall within the coverage of the policy, the insurer's duty to defendant is triggered."  
Guillen
, 203 Ill. 2d at 150.  In analyzing the terms of an insurance policy, words that are clear and unambiguous must be given their plain, ordinary and popular meaning.  
Travelers Insurance
, 197 Ill. 2d at 292-93.  

The Lanes' policy defined "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in bodily injury or property damage."   The policy excluded "any liability an insured person assumes arising out of any contract or agreement" and "damage intended by, or which reasonably may be expected to result from the intentional *** acts or omissions of[,] any injured person."   

The Lanes argue that Allstate is obligated to defend them because the Sterns' claims of "negligent representation and negligent failure to ascertain defects" alleged an "occurrence" resulting in "property damage."  We disagree. 

The record makes clear that the Sterns' claims do not arise from an occurrence within the meaning of the Allstate policy.  The complaint did not allege that the property damage was caused by the Lanes' failure to disclose leaks and defects to the Sterns in July 1999.  Instead, the Sterns alleged that the property damage was caused by the faulty installation of windows and resulting water infiltration in the 1980s and 1990s.  The Lanes'  failure to disclose defects during a one-month period in 1999 could not have caused damage which accrued during an earlier 10-year period.  Nor did the complaint allege an "occurrence" in the form of an "accident" under the policy.  To the contrary, the Sterns alleged that the Lanes' failure to mention the leaks or water damage was deliberate, not careless or negligent.  Because the Lanes' failure to inform the Sterns about the known defects was not an occurrence, Allstate owed no duty to defend the Lanes against the Sterns' claims.  The Lanes' case for coverage is further weakened by the fact the Sterns' complaint arises from a contract and alleged intentional acts, both of which are excluded under the Allstate policy.     

The Lanes rely on 
Prisco Serena Sturm Architects, Ltd. v. Liberty Mutual Insurance Co.
, 126 F.3d 886, 890-91 (7th Cir. 1997), where the Seventh Circuit
 concluded that the 
negligent inspection and certification
 of defective construction work was an occurrence under an insurance policy with essentially the same language as here.  
Prisco
, 126 F.3d at 891.  In 
Prisco
, a school hired Prisco Serena Sturm Architects (PSSA) to guard against defects in a construction contractor's work.  
Prisco
, 126 F.3d at 888.  PSSA performed its job negligently, the construction was faulty and the school sued PSSA.  
PSSA's insurance carrier denied coverage, finding that the underlying claim did not allege an occurrence within the meaning of the policy.  
Prisco
, 126 F.3d at 890.  The Seventh Circuit concluded that the complaint did allege an occurrence because PSSA was negligent in performing its role as inspector and certifier and prevented the school from discovering faulty construction work.  
Prisco
, 126 F.3d at 891.  The court relied on 
Posing v. Merit Insurance Co.
, 258 Ill. App. 3d 827, 834, 629 N.E.2d 1179 (1994), where a termite infestation was held to be an occurrence for insurance purposes after faulty inspection and treatment of the premises resulted in property damage.

Allstate distinguishes 
Prisco
 and 
Posing
, arguing that the respective insured's conduct in those cases was alleged to have been unknowing.  See 
Prisco
, 126 F.3d at 891 (the complaint does not allege that PSSA intentionally overlooked or expected to miss the contractor's shortcomings); 
Posing
, 258 Ill. App. 3d at 834 (the underlying suits do not allege that the insured "expected" or "intended" the infestation).  By contrast, Allstate argues, the Sterns consistently alleged that the Lanes knew of the defects yet failed to inform the Sterns and, in fact, made misrepresentations.

We agree that 
Prisco
 and 
Posing
 are distinguishable.  The Sterns alleged that the Lanes knew of the defects to such an extent that they discussed the matter with their realtor and purportedly followed his advice to conceal the information.  Even if, as the trial court suggests, the Lanes did not realize the full extent of the damage, they are alleged to have known of and concealed the defects. 

 The Lanes cite 
TIG Insurance Co. v. Joe Rizza Lincoln-Mercury, Inc.
, No. 00 C 5182, (N.D. Ill. March 14, 2002), where the federal district court found that an insurance company owed a duty to defend an underlying lawsuit alleging negligent misrepresentation where an insured recklessly disregarded the truth.  The court in 
TIG
 considered allegations that the insured recklessly disregarded the truth.  "Reckless disregard" occurs when a party makes a statement "despite a high degree of awareness of its probable falsity or entertaining serious doubts as to its truth."   
St. Paul Insurance Co. of Illinois v. Landau, Omahana & Kopka, Ltd.
, 246 Ill. App. 3d 852, 858, 619 N.E.2d 1266 (1993) (recklessness does not include knowing falsehoods). 

The evidence here, including the residential real property disclosure report signed by the Lanes and the Sterns, supports the conclusion that the Lanes made representations that they knew to be false.  It is not alleged that the Lanes merely entertained doubts as to whether the residential real property report was true or that they suspected that the report was "probably false."  The Sterns asserted that the Lanes knew for a fact that the home was damaged and they deliberately failed to tell the prospective buyers.

 Both parties rely on out-of-state cases to support their arguments.  Only in the absence of Illinois authority on the point of law in question are we to look to other jurisdictions for persuasive authority.  
People ex rel. Watson v. Spinka
, 58 Ill. App. 3d 729, 734, 374 N.E.2d 787 (1978).  While Illinois authority is sufficient to resolve the issues before us, the parties' out-of-state citations help illustrate relevant points.

The Lanes call our attention to 
Wood v. Safeco Insurance Co. of America
, 980 S.W.2d 43 (Mo. App. 1998),  and its predicate, 
Sheets v. Brethren Mutual Insurance Co.
, 342 Md. 634, 679 A.2d 540 (1996).  The courts in both cases concluded that a negligent misrepresentation complaint alleged an occurrence and invoked the insurance company's duty to defend.  In 
Wood
, the Missouri court found it "conceivable" that the insured person who sold his riverfront property had never experienced flooding in the residence he represented to the buyers as flood-proof.  The property flooded after the sale.  
Wood
, 980 S.W.2d at 54.  In 
Sheets
, the Maryland court found that it was conceivable that the insured farmer, who had a small family, never experienced the septic system problems that occurred after a much larger family purchased the property.  
Sheets
, 342 Md. At 657, 679 A.2d at 551.  

Here, we cannot read the Sterns' complaint as conceding that the Lanes may have been unaware of the water infiltration damage.  The Sterns alleged the Lanes made repairs to conceal the damage before the sale.  
Wood
 and 
Sheets
 do not persuade us that the Sterns' allegations created a duty to defend.

Another case on point is 
Cincinnati Insurance Co. v. Anders
, 99 Ohio St. 3d 156, 789 N.E.2d 1094 (2003), which we granted leave to Allstate to cite as supplemental authority.  In that Ohio case, the homeowners' insurance policy defined occurrence in essentially the same terms as the Lanes' policy.  
Cincinnati Insurance
, 99 Ohio St. 3d at 160, 789 N.E.2d at 1098.  The homeowners failed to disclose structural, electrical, mechanical and plumbing defects in the house when they sold it.  When named in the resulting lawsuit, the sellers asked their insurer to provide legal representation under their homeowners' policy and the company refused.  
Cincinnati Insurance
, 99 Ohio St. 3d at 156, 789 N.E.2d at 1095.  The Ohio Supreme Court reviewed essentially the same question presented here: " '[w]hether insurance policies covering personal injuries arising out of property damages provide coverage to homeowners who are sued for their negligent failure to disclose to purchasers damage to the property that occurred during the sellers' occupancy.' "  
Cincinnati Insurance
, 99 Ohio St. 3d at 157,  789 N.E.2d at 1096.  The court answered the question, as have we, in the negative, concluding: "The actual accident was the faulty installation of the insulation, leading to the structural deterioration of the house.  The underlying claims of the [buyers] against the [sellers] pertain to the nondisclosure of the damage, not the damage itself.  Therefore, the underlying claims are outside the scope of the [insurance] policy."  
Cincinnati Insurance
, 99 Ohio St. 3d at 160-61, 789 N.E.2d at 1098. 

We believe the reasoning in 
Cincinnati Insurance
 is relevant to our decision here.  The actual accident or occurrence here was the faulty installation of windows, leading to the structural deterioration of the house.  The Sterns' claim pertained to the nondisclosure of the damage, not to the damage itself.  The underlying claims, then, are outside the scope of the Lanes' Allstate policy.

The judgment of the circuit court is affirmed.

Affirmed. 

BURKE and GARCIA, JJ., concur.