# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**USAA Casualty Insurance Co. v. McInerney, 2011 IL App (2d) 100970**

---

| | |
|---|---|
| Appellate Court Caption | USAA CASUALTY INSURANCE COMPANY, Plaintiff and Counterdefendant-Appellant, v. THOMAS A. McINERNEY III and KELLY K. McINERNEY, Defendants and Counterplaintiffs-Appellees (Paul J. Cyr and Laurie Cyr, Individually and as Parents and Next Friends of Summer Cyr, Kai Cyr, and Torrey Cyr, Minors, Defendants). |
| District & No. | Second District<br>Docket No. 2-10-0970 |
| Filed | October 31, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The appellate court affirmed an order finding that defendants' homeowners' insurer had a duty to defend them in an underlying action by the purchasers of defendants' residence seeking rescission of the real estate sales contract or compensatory damages under theories of breach of contract, violation of the Residential Real Property Disclosure Act, fraudulent misrepresentation and negligent misrepresentation arising from water infiltration that occurred after they took possession on the grounds that the complaint alleged "property damage" and "bodily injury" as a result of an "occurrence" that was at least potentially covered by the policy issued by plaintiff. |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 09-MR-1492; the Hon. Raymond J. McKoski, Judge, presiding. |
| Judgment | Affirmed. |

| | |
|---|---|
| Counsel on Appeal | Mark W. Monroe, of Law Offices of Mark W. Monroe LLC, of Wheaton, for appellant. |
| | Robert R. Tepper, of Chicago, for appellee. |
| Panel | JUSTICE SCHOSTOK delivered the judgment of the court, with opinion. Justices McLaren and Hudson concurred in the judgment and opinion. |

**OPINION**

¶ 1    The plaintiff, USAA Casualty Insurance Company (USAA), appeals from an order entered in favor of the defendants, Thomas and Kelly McInerney. The trial court concluded that USAA owed a duty to defend the McInerneys in a lawsuit brought against them by Paul and Laurie Cyr. The Cyrs sought rescission of a real estate contract or compensatory damages because, following the purchase of their home from the McInerneys, the Cyrs experienced extensive water infiltration and flooding in the basement of the home. We affirm.

¶ 2                               I. BACKGROUND

¶ 3    On June 23, 2006, the Cyrs entered into a real estate contract to purchase the McInerneys' house in Lake Bluff. The McInerneys signed a residential real property disclosure report indicating that they were "aware of flooding or reoccurring leakage problems in [the] crawlspace or basement." The McInerneys supplemented that disclosure by further stating in the report that "during heavy rains slight seepage has occurred. New landscaping and [two] drains have provided [a] remedy to this occurrence. On rare occasions, we experience slight seepage." The sale was closed on July 27, 2006. In March 2007, the Cyrs began to experience significant water infiltration and flooding in the basement of the home. The Cyrs and their children also began to experience mold-related illnesses.

¶ 4    On June 1, 2007, the Cyrs filed a complaint, seeking rescission of the real estate sales contract or compensatory damages under the theories of breach of contract, violation of the Residential Real Property Disclosure Act (Disclosure Act) (765 ILCS 77/1 *et seq.* (West 2006)), fraudulent misrepresentation, and negligent misrepresentation. The Cyrs alleged that, after taking possession of the property, they began to experience "continuous water infiltration through the walls and the foundation into the basement, in amounts well in excess of what could be considered 'slight seepage.' " In addition, during heavier rains, the basement would become flooded and soaked. The Cyrs further alleged that, because they spent a great deal of time in the playroom and office in the basement, they began to experience severe mold-related illnesses due to the presence of stationary and airborne mold throughout the home. The Cyrs were forced to evacuate until they could conduct a full mold remediation of the home.

¶ 5    In their claim for negligent misrepresentation (count IV), the Cyrs alleged that the McInerneys breached their duty to exercise reasonable care in completing the disclosure report by (1) "carelessly omitting" the fact that there were material defects in the basement and foundation when they should have known of such defects, and (2) "disclosing that there was only slight seepage in [the] basement, which was based on their careless and erroneous determination as to the nature of the leakage problems in the basement." The Cyrs further alleged that, "[a]s a direct, proximate, reasonably probable and foreseeable consequence of the [McInerneys'] negligent acts or omissions," they suffered loss and damage to the property and to their personal belongings, and personal injury.

¶ 6    The McInerneys' USAA family liability insurance policy provided:

"If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will:

1. pay up to our limit of liability for the damages for which the insured is legally liable; and

2. provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent ***."

Accordingly, the McInerneys tendered to USAA the defense of the underlying action. USAA refused to defend the McInerneys. On January 2, 2009, USAA filed a complaint for declaratory judgment, arguing that the McInerneys were not covered because the Cyrs did not allege that the McInerneys' conduct resulted in bodily injury or property damage caused by an occurrence as defined in the policy. USAA further argued that any alleged occurrence was excluded from coverage because it was caused by intentional acts of the McInerneys or because the action arose from a contract.

¶ 7    The McInerneys filed an answer and a counterclaim to USAA's complaint for declaratory judgment. In their counterclaim, the McInerneys requested that the trial court enter a judgment in their favor for the legal expenses they incurred in defending the underlying action plus prejudgment interest and costs (count I). The McInerneys also requested attorney fees pursuant to section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2008)), arguing that USAA's conduct in refusing to defend was vexatious and unreasonable (count II).

¶ 8    On March 18, 2010, USAA filed a motion for judgment on the pleadings pursuant to section 2-615(e) of the Code of Civil Procedure (735 ILCS 5/2-615(e) (West 2008)). USAA argued that it did not have a duty to defend the McInerneys in the underlying action because the Cyrs' claims were outside the scope of coverage. Specifically, USAA argued that the complaint did not allege an "occurrence" or "bodily injury" or "property damage" "caused by an occurrence" and that the intentional acts and contract exclusions excluded coverage as a matter of law.

¶ 9    On March 22, 2010, the McInerneys filed a motion for summary judgment on the declaratory judgment complaint and their counterclaim. The McInerneys argued that the Cyrs' claim for negligent misrepresentation clearly fell within the scope of coverage of the insurance policy and that USAA had a duty to defend on that basis. It was undisputed that

USAA did not owe the McInerneys a duty to defend the claims for breach of contract, violation of the Disclosure Act, or fraudulent misrepresentation. The only issue was whether USAA owed a duty to defend the McInerneys based on the claim for negligent misrepresentation. On April 28, 2010, the trial court denied USAA's motion for judgment on the pleadings and denied the McInerneys' motion for summary judgment.

¶ 10       A bench trial was held on August 25, 2010. Following the presentation of evidence and argument, the trial court, finding no evidence of vexatious or unreasonable conduct by USAA, found in favor of USAA on count II of the McInerneys' counterclaim. However, the trial court denied USAA's complaint for declaratory judgment and found in favor of the McInerneys on count I of their counterclaim. Specifically, the trial court found that USAA had a duty to defend the McInerneys in the underlying suit and awarded the McInerneys the fees they incurred to defend themselves in that suit, $177,201.47. The trial court noted that the complaint in the underlying action clearly stated a claim for negligence and that such a claim was not unusual, because of the difficulty in proving intentional or fraudulent acts. The trial court found that the claim for negligent misrepresentation was not part of a ploy to trigger USAA's duty to defend. The trial court further found that both the flooding in the house subsequent to the sale and the negligent misrepresentations constituted an "occurrence" and that the misrepresentations caused property damage and personal injury. Thereafter, USAA filed a timely notice of appeal.

¶ 11                                              II. ANALYSIS

¶ 12       On appeal, USAA argues that the trial court erred in finding that it had a duty to defend the McInerneys in the underlying action. Specifically, USAA argues that the McInerneys' conduct was clearly intentional and thus outside the scope of coverage. USAA further argues that neither the negligent failure to disclose defects nor the postsale flooding was an occurrence and that the claim for negligent misrepresentation was a transparent attempt to trigger coverage. Finally, USAA argues that the contract exclusion and the loss-in-progress doctrine preclude coverage as a matter of law.

¶ 13       An insurer's duty to defend its insured is determined by comparing the allegations of the underlying complaint with the relevant provisions of the insurance policy. *Dixon Distributing Co. v. Hanover Insurance Co.*, 161 Ill. 2d 433, 438 (1994). An insurer may refuse to defend only when the allegations of the lawsuit "cannot possibly cover the liability arising from the facts alleged." *Illinois Emcasco Insurance Co. v. Northwestern National Casualty Co.*, 337 Ill. App. 3d 356, 360 (2003). If the underlying complaint alleges facts within or potentially within coverage, the insurer is obligated to defend its insured even if the allegations are groundless, false, or fraudulent. *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73 (1991). Moreover, if the underlying complaint against the insured contains several theories of recovery and only one of the theories is potentially covered, the insurer must still defend the insured. *General Agents Insurance Co. of America, Inc. v. Midwest Sporting Goods Co.*, 215 Ill. 2d 146, 155 (2005). As such, the insurer may become obligated to defend against causes of action and theories of recovery that the policy does not actually cover. *Illinois Masonic Medical Center v. Turegum Insurance Co.*, 168 Ill. App. 3d

158, 162 (1988). The allegations of the underlying complaint must be liberally construed in favor of the insured, and any doubt about coverage should be resolved in favor of the insured. *Pekin Insurance Co. v. Richard Marker Associates, Inc.*, 289 Ill. App. 3d 819, 821 (1997). The construction of an insurance policy is a question of law that we review *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 108 (1992).

¶ 14       The McInerneys' policy defined "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in *** bodily injury; or *** property damage." The policy defined "bodily injury" as "bodily harm, sickness or disease." The policy defined "property damage" as "physical damage to, or destruction of tangible property, including loss of use of this property." The policy excluded coverage for any liability arising out of any contract or agreement. The policy also excluded coverage for bodily injury and property damage "caused by the intentional or purposeful acts of any insured, including conduct that would reasonably be expected to result in bodily injury *** or property damage."

¶ 15       The policy did not define "accident" but Illinois courts have defined an accident "as an unforeseen occurrence, usually of an untoward or disastrous character or an undesigned sudden or unexpected event of an inflictive or unfortunate character." (Internal quotation marks omitted.) *Country Mutual Insurance Co. v. Hagan*, 298 Ill. App. 3d 495, 507 (1998) (citing cases). In determining whether an occurrence is an "accident," Illinois courts have focused on whether the injury is expected or intended from the standpoint of the insured. *Id.*

¶ 16       Courts from other states are split on the issue of whether a negligent misrepresentation can be an "occurrence" within the meaning of general liability policies like the one at issue in the present case. See H. Brent Brennenstuhl, Annotation, *Negligent Misrepresentation as "Accident" or "Occurrence" Warranting Insurance Coverage*, 58 A.L.R.5th 483 (1998). Some courts have held that a claim for negligent misrepresentation properly alleged an "occurrence" and invoked the insurance company's duty to defend. See *id.* at § 5(a) (citing, *inter alia*, *Wood v. Safeco Insurance Co. of America*, 980 S.W.2d 43, 54 (Mo. Ct. App. 1998) (insured seller's negligent misrepresentations that house was not in a flood plain were an "occurrence" because the court found it conceivable that the insured person who sold his riverfront property had never experienced flooding in his residence prior to its sale), and *Sheets v. Brethren Mutual Insurance Co.*, 679 A.2d 540, 551 (Md. 1996) (failure of septic system following sale of house fit within the definition of "accident" because the court found it conceivable that the insured seller, who had a small family, never experienced the septic system problems that occurred when a larger family moved in)).

¶ 17       Other courts have held that negligent misrepresentations as to the condition or value of real estate did not constitute "occurrences" or "accidents" under similar insurance policies. See *id.* at § 5(b) (citing, *inter alia*, *Miller v. Western General Agency, Inc.*, 49 Cal. Rptr. 2d 55, 58 (Cal. Ct. App. 1996) (misrepresentations causing investment or other economic loss are considered purposeful rather than accidental for purposes of insurance coverage), *Allstate Insurance Co. v. Chaney*, 804 F. Supp. 1219, 1221-22 (N.D. Cal. 1992) (under California law, negligent misrepresentation is treated as a type of fraud and therefore cannot be an "accident" or an "occurrence" under an insurance policy), and *Safeco Insurance Co. of America v. Andrews*, 915 F.2d 500, 502 (9th Cir. 1990) (insured's misrepresentations in

connection with the sale of property were not "occurrences" under the policy)).

¶ 18    No Illinois court has directly addressed whether a negligent misrepresentation can be an "occurrence" resulting in "property damage" or "bodily injury" under a homeowner's general liability policy. However, Illinois courts have held that claims based on negligence are not necessarily excluded from coverage of general liability policies as long as the insured did not expect or intend the injury. See *Wilkin*, 144 Ill. 2d at 77 (insurer had duty to defend on complaint for negligence in installation of asbestos-containing insulation); *American Family Mutual Insurance Co. v. Enright*, 334 Ill. App. 3d 1026, 1033 (2002) (negligent hiring was an occurrence that invoked coverage under a general business liability policy); *Hagan*, 298 Ill. App. 3d at 509 (negligence count of the complaint was within the coverage of the policy because the insured did not expect or intend the injury). There is no Illinois authority for the proposition that negligent misrepresentations cannot fall within the realm of coverage under a general liability policy. As such, we find no reason why we should treat a claim for negligent misrepresentation any differently than any other claim based on negligence. In addition, any doubt about whether allegations in a complaint state a potentially covered cause of action is ordinarily resolved in favor of the insured. *Pekin Insurance*, 289 Ill. App. 3d at 821. Accordingly, we hold that a claim based on negligent misrepresentation is not necessarily excluded from coverage under a homeowner's general liability policy as long as the insured did not expect or intend the injury.

¶ 19    In determining whether USAA had a duty to defend the McInerneys under the circumstances in the present case, we find *Posing v. Merit Insurance Co.*, 258 Ill. App. 3d 827 (1994), instructive. In *Posing*, several claims against Del Posing, doing business as Del's Pest Control (Posing), were joined in a single suit. *Id.* at 829-30. The claimants alleged, *inter alia*, that Posing negligently performed inspections for the presence of termites, which resulted in later termite damage to the claimants' properties. *Id.* Posing tendered the defense of the suit to its insurer, Merit Insurance Company (Merit), with which it had a comprehensive general liability policy. The policy covered any "occurrence" that resulted in "bodily injury" or "property damage." *Id.* at 829. Merit refused to defend Posing because, it argued, the underlying complaints did not allege an "occurrence." *Id.* at 831. Posing filed a complaint for declaratory judgment, requesting that the trial court find that Merit had a duty to defend it in the underlying suit. *Id.* at 828. The trial court granted that request and Merit appealed. *Id.*

¶ 20    On appeal, Merit argued that it did not have a duty to defend because the claimants suffered only intangible economic loss and because there had been no "occurrence" giving rise to "property damage." The reviewing court affirmed the trial court's finding that Merit had a duty to defend Posing and held as follows:

> "Factually, each of the underlying complaints alleges 'property damage' in that the subject real estate was partially destroyed by pest infestation allegedly resulting from Posing's faulty inspection or treatment. *** [W]e find that this damage is a tangible, physical injury to property within the policy's definition of 'property damage.' Likewise, insofar as the policy includes as an 'occurrence' or 'accident' 'continuous or repeated exposure to conditions resulting in property damage,' we find that the pest infestation complained of in the underlying complaints constitutes an 'occurrence' within the

-6-

coverage of the policy." *Id.* at 834.

The reviewing court further noted that at least one count in each of the underlying complaints alleged negligent conduct without alleging that Posing "expected" or "intended" the pest infestation complained of. *Id.*

¶ 21    In *Posing*, the insurer had a duty to defend because the pest infestation was found to be an "occurrence" that resulted in termite damage to the property, allegedly resulting from Posing's faulty inspection. Similarly, in the present case, the water infiltration, flooding, and mold growth was also an "occurrence" that resulted in damage to the real property and personal belongings in the basement, as well as in mold-related illnesses. The Cyrs specifically alleged that the damages were proximately caused by the McInerneys' negligent misrepresentations, which they relied on when purchasing the home. In count IV, the Cyrs did not allege that the McInerneys expected or intended the injuries. Whether we view the postsale flooding as the occurrence causing damages as a result of the negligent misrepresentations or we view the negligent misrepresentations as the occurrence causing damages as a result of the postsale flooding, the result is the same. Accordingly, under *Posing*, and liberally construing the allegations of the underlying complaint in favor of the McInerneys (*Pekin Insurance*, 289 Ill. App. 3d at 821), we conclude that the complaint alleged "property damage" and "bodily injury" as a result of an "occurrence" that was at least potentially covered by the USAA policy. Accordingly, USAA had a duty to defend the McInerneys in the underlying lawsuit. See *Wilkin*, 144 Ill. 2d at 73 (insurer obligated to defend if allegations of complaint potentially fall within coverage).

¶ 22    USAA argues that this case is controlled by *Allstate Insurance Co. v. Lane*, 345 Ill. App. 3d 547 (2003). In *Lane*, the defendants, John and Joan Lane, sold their home to Bruce and Silvia Stern. *Id.* at 548. Soon after the Sterns moved in, they discovered leaks, water damage, and sewer odors. *Id.* The Sterns filed a complaint against the Lanes, seeking rescission of the sales contract or restitution under theories of fraudulent and negligent misrepresentation. *Id.* The Lanes tendered defense of the action to Allstate, with which they had a liability insurance policy. *Id.* at 549. Allstate refused to defend the action and filed a declaratory judgment action, claiming that the underlying complaint did not allege "property damage" caused by an "occurrence" as defined in the policy. *Id.* The trial court found that there was no occurrence as defined in the policy and granted Allstate's motion for summary judgment. *Id.* at 550. The Lanes appealed. *Id.*

¶ 23    On appeal, the reviewing court affirmed the trial court's determination. *Id.* at 551. The reviewing court held that the Sterns' claims did not arise from an occurrence within the meaning of the policy for two reasons. First, the reviewing court noted that the complaint alleged that the damage was caused by the faulty installation of windows and resulting water intrusion during a 10-year period prior to the sale of the house. The reviewing court held that "[t]he Lanes' failure to disclose defects [at the time of sale] could not have caused damage which accrued during an earlier 10-year period." *Id.* Second, the reviewing court noted that the complaint did not allege an "occurrence" in the form of an "accident" because the complaint alleged that the failure to disclose was deliberate, not careless or negligent. *Id.* For these reasons, the reviewing court held that Allstate did not owe the Lanes a duty to defend. *Id.*

¶ 24    *Lane* is distinguishable on its facts. In the present case, unlike *Lane*, property damage occurred after the sale of the house. The Cyrs alleged that, after the sale, they experienced water infiltration, basement flooding, and airborne mold that resulted in property damage, loss of use of the property, and mold-related illnesses. We acknowledge that in paragraph 31 of the underlying complaint, as one of the allegations within the claim for breach of contract, the Cyrs alleged that "[t]he backyard flooding, water intrusion, mold growth, deterioration of building components, and contamination of the atmosphere of the Property constitute material defect(s) in the Property, which existed prior to [the McInerneys'] sale and [the Cyrs'] purchase of the Property." It is clear from *Lane* that preexisting damage would not be covered by the McInerneys' liability policy. Nonetheless, in addition to alleging preexisting damage, the Cyrs also clearly alleged postsale damage and injury.

¶ 25    In further contrast to *Lane*, the Cyrs properly alleged in count IV of the underlying complaint that the McInerneys' conduct was negligent, not intentional. In *Lane*, the Sterns alleged that the Lanes knew of the defects to such an extent that they discussed the matter with their realtor and followed his advice to conceal the information. *Id.* at 552. Although the Sterns' complaint included a claim based on negligence, the *Lane* court concluded that the alleged conduct could not be construed as negligent.

¶ 26    In the present case, the Cyrs alleged that the McInerneys negligently misrepresented the condition of the home. Although count IV incorporated all the preceding paragraphs in the complaint, including those based on intentional conduct, a plaintiff is allowed to state alternative theories of recovery against a defendant, even in the same count. See 735 ILCS 5/2-613(b) (West 2006) (stating that, when a party is in doubt about which statements of fact are true, they may state them in the alternative or hypothetically in the same or different counts). Moreover, "[n]o pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim or defense which he or she is called upon to meet." 735 ILCS 5/2-612(b) (West 2006). Based on our review of the underlying complaint, the Cyrs properly alleged an alternative theory of recovery and there is no indication that the claim for negligent misrepresentation was a transparent attempt to trigger insurance coverage. The allegations indicated that the basement was finished. However, there was no indication of when the basement was finished or how long the McInerneys had lived in the home. Accordingly, it was conceivable that the McInerneys were unaware of the defects and that they never experienced significant flooding in the basement. See *Wood*, 980 S.W.2d at 54; *Sheets*, 679 A.2d at 551. Accordingly, we find USAA's reliance on *Lane* unpersuasive.

¶ 27    USAA argues that coverage is precluded by the loss-in-progress doctrine. Under this doctrine, otherwise referred to as the "known loss" doctrine, "[i]f the insured knows or has reason to know, when it purchases a comprehensive general liability policy, that there is a substantial probability that it will suffer a loss, the risk ceases to be contingent and becomes a probable or known loss that will not be covered by the policy." *AAA Disposal Systems, Inc. v. Aetna Casualty & Surety Co.*, 355 Ill. App. 3d 275, 288 (2005). For example, a homeowner cannot insure against flood damage when flooding has already occurred. See *Outboard Marine*, 154 Ill. 2d at 103 (citing *Summers v. Harris*, 573 F.2d 869, 872 (5th Cir. 1978)). Because count IV of the underlying complaint is based on negligent

misrepresentation, and not intentional or "knowing" conduct, the known loss doctrine is necessarily inapplicable.

¶ 28     Finally, USAA argues that the contract exclusion precludes coverage as a matter of law. The USAA policy provided that liability coverage does not apply to liability arising under any contract or agreement. USAA argues that the disclosure report would not exist but for the real estate contract for the sale of the McInerneys' home to the Cyrs. Nonetheless, the disclosure report itself is not a contract; it is a creature of statute. Accordingly, negligence in completing the report does not arise under a contract and the contract exclusion is, therefore, inapplicable. USAA points out that in *Lane* the reviewing court stated in *dicta* that "[t]he Lanes' case for coverage is further weakened by the fact that the Sterns' complaint arises from a contract and alleged intentional acts, both of which are excluded under the Allstate policy." *Lane*, 345 Ill. App. 3d at 551. The *Lane* court did not expound upon its reasoning for this statement. However, *Lane* is distinguishable in that the relief sought by the buyers in that case was either rescission of the sales contract or restitution (*id.* at 548), both contract-based remedies. In the present case, the Cyrs sought, in count IV, compensation for the negligent misrepresentations in the disclosure report. As the remedy sought was not contract based, we find the *dicta* in *Lane* unpersuasive.

¶ 29                                III. CONCLUSION
¶ 30     For the foregoing reasons, the judgment of circuit court of Lake County is affirmed.

¶ 31     Affirmed.