## WESTERN EXTERMINATING COMPANY, Appellant,

v.

## HARTFORD ACCIDENT AND INDEMNITY CO., Appellee.

### No. 82-1492.

District of Columbia Court of Appeals.

Argued Feb. 29, 1984.

Decided July 12, 1984.

---

Alan Farber, Washington, D.C., for appellant. Phillip D. Green, Washington, D.C., was on the brief, for appellant.

Edwin A. Sheridan, Washington, D.C., for appellee.

Before BELSON and TERRY, Associate Judges, and KERN,* Associate Judge, Retired.

KERN, Associate Judge, Retired:

Appellant, Western Exterminating Company (Western), is a corporation organized under the laws of Delaware, doing business in the District of Columbia. As part of its normal business operation, Western inspects homes for termite damage and termite infestation.

Western has a comprehensive general liability insurance policy with appellee, Hartford Accident and Indemnity Company (Hartford). Basically, the policy provides that Hartford will pay all damages incurred by Western and defend any suit brought against Western because of an "occurrence" resulting in "property damage".

Mr. and Mrs. Remeikis filed a complaint and then an amended complaint against Western in the trial court alleging that they were damaged by Western's negligent and fraudulent termite inspection of a house the Remeikises had agreed to purchase. The complaints alleged that Western's actions amounted to gross negligence and willful disregard of the plaintiffs' rights. In addition, the Remeikises alleged that Western's misrepresentations as to the absence of termite damage in the house they were about to purchase amounted to fraud, deceit and conspiracy to defraud in concert with the seller of the house and the realty broker firm. The complaints sought both compensatory and punitive damages.

Hartford, upon being notified of these claims, took various positions as to its duty under the policy to defend Western. Hartford ultimately refused to defend Western against the complaints in the *Remeikis* case. Western retained counsel and, at trial, won a directed verdict against the

* Judge Kern was an Associate Judge of the court at the time of argument. His status changed to Associate Judge, Retired, on May 25, 1984.

Remeikises. This court on appeal reversed and remanded for a new trial. *Remeikis v. Boss & Phelps*, 419 A.2d 986 (D.C.1980). Western subsequently settled with the Remeikises and now seeks to recover all expenses incurred in defending the *Remeikis* case as well as all expenses incurred in establishing Hartford's wrongful refusal to provide a defense in that case.

On the cross-motions by the parties for summary judgment, the trial court ruled that the policy in question did *not* require Hartford to defend or indemnify Western in the *Remeikis* case. The court concluded that "the negligent or fraudulent issuance of a termite inspection report is not an 'occurrence' which caused property damage." The court determined that Hartford's actions in first entering and then withdrawing from the *Remeikis* litigation on behalf of Western raised a question of fact as to whether Hartford might be estopped from denying any obligation to defend Western. However, Western withdrew its estoppel claim before the trial court in order to permit entry by the court of a final judgment; Western then appealed the trial court's ruling that Hartford did not have a duty under the policy to defend Western against the claims asserted in the *Remeikis* litigation or to pay the amount of Western's settlement with the Remeikises.

The duty to defend depends on the terms of the insurance policy and the allegations in the complaint against the insured. The rule is stated as follows:

> The obligation of the insurance company to defend an action against insured, as distinguished from its obligation to pay a judgment in that action, by the overwhelming weight of authority is to be determined by the allegations of the complaint.... If the allegations of the complaint state a cause of action within the coverage of the policy the insurance company must defend. On the other hand, if the complaint alleges a liability not within the coverage of the policy, the insurance company is not required to defend. In case of doubt such doubt ought to be

resolved in the insured's favor. [*Boyle v. National Casualty Co.*, D.C.Mun. App., 84 A.2d 614, 615–16 (1951) (footnotes omitted).]

*S. Freedman & Sons, Inc. v. Hartford Fire Insurance Co.*, 396 A.2d 195, 197 (D.C.1978).

Hartford's obligation in the instant case then is determined by comparing its policy with Western with the complaints filed against Western in the *Remeikis* litigation. Hartford promises in the policy to defend all suits arising because of an "occurrence" which causes "property damage". Specifically, the insurance policy provides in relevant part as follows:

> The company [Hartford] will pay on behalf of the insured [Western] all sums which the insured shall become legally obligated to pay as damages because of
>
> Coverage A—bodily injury or
>
> Coverage B—property damage
>
> to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent....

The policy defines "occurrence" as "an accident, including continuous or repeated exposure to conditions which result in bodily injury or property injury neither expected nor intended from the standpoint of the insured." The policy defines property damage as "(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period." Thus, under the terms of the policy, there can be no "occurrence" without resulting damage to tangible property. The question is whether the *Remeikis* complaints raise the possibility of such "property damage" caused by an "occurrence".

The *Remeikis* complaints were drafted in three counts: breach of contract; negligence; and fraud and deceit. The breach of contract count ran against the seller of the house who contracted to provide the Remeikises "with a statement from a reliable termite company that the property in question was free from termite damage ...." The complaints allege that the contract was breached in that the statement from Western that the house was free from termite damage was not tendered in good faith, and was false and misleading in that the house had extensive termite damage. The second count alleged that Western was negligent in providing the statement regarding the absence of termite damage without conducting a thorough investigation from which it would have or should have known of the presence of termite damage. The third count alleges fraud and deceit and a conspiracy to defraud by the misrepresentation that the property was free from termite damage.

▮ After reviewing the complaints, it is clear that the Remeikises in essence allege that Western negligently and fraudulently prepared a termite report indicating that the house the Remeikises purchased was free from termite damage when in fact the house "did contain termite damage." We assume arguendo that the alleged negligent inspection by Western qualifies as an "accident," as that term is used in the general liability insurance policy here, since any injury resulting from ordinary negligence is accidental. *See* 11 *Couch on Insurance 2d* § 44:286 (Rev. ed. 1982). However, the terms of the insurance policy between Western and Hartford make clear that the accident must result in damage to tangible property for the accident to be an "occurrence", within the meaning of the policy. We are unable to discern from the complaints any allegation that Western's negligence caused an accident resulting in damage to *tangible* property. The injuries the Remeikises allege they suffered from Western's alleged negligent inspection consist of their costs to restore the house they purchased to the condition warranted by the seller, and their damages arising out of the fact that the house was less valuable than they had expected when they bought it. However, "[s]trictly economic losses such as loss of profits, loss of good will or loss of benefits are not damage or injury to tangible property and do not constitute the requisite property damage." 11 COUCH ON INSURANCE 2d, *supra*, § 44:287.

In *Hamilton Die Cast, Inc. v. United States F. & G. Co.*, 508 F.2d 417 (7th Cir.1975), the relevant portions of the insurance policy were substantially identical to the policy in the instant case. Hamilton Die Cast sought a declaratory judgment that the insurance company had to defend it against a suit by Midland Sporting Goods. The complaint alleged that Hamilton Die Cast provided Midland with defective tennis rackets, and described the damages as follows:

> As a result of the matter set forth in the foregoing paragraphs ... plaintiff's [Midland] supply of tennis rackets was not sufficient for it to satisfy the demand for such rackets, plaintiff was required to refund the purchase price of defective tennis rackets which were returned to it, and the reputation of plaintiff and its tennis racket in the market was damaged....

*Id.* at 418–19.

The Seventh Circuit held that these damages were not "property damage" as defined in the policy, but damages for injury to intangible property. The court noted that while plaintiff contends "that there was 'property damage' to the finished product, the racket, by reason of the defective part, the frame[,] [w]e do not think that the mere inclusion of a defective component, where no physical harm to other parts result therefrom, constitutes 'property damage' within the meaning of the policy." *Id.* at 419.

The court further found that these damages were not the result of an "occurrence," stating:

If one of the completed rackets had broken during normal use due to the defective frames and a person or an item of property had been harmed, it seems clear that there would have been an "occurrence" and that defendant would have had responsibility for plaintiff's defense. Such a situation would clearly be "an accident." The policy does not, however, cover "an occurrence of alleged negligent manufacture"; it covers negligent manufacture that results in "an occurrence."

*Id.* at 420.

Applying the teaching of *Hamilton* to the instant case, the alleged negligent inspection by Western would be an accident, but the accident did not result in tangible property damage to the Remeikises. Thus, the accident, *viz.*, the faulty inspection, was not an "occurrence" within the terms of the policy between Hartford and Western.

Western does not argue that the diminution in value of the house because of termite damage is, by itself, property damage within the terms of the policy. According to Western, to so argue would be to confuse the injury to tangible property with the nature of the damages flowing from the negligent inspection. Western urges, based on *General Insurance Company of America v. Gauger,* 13 Wash.App. 928, 538 P.2d 563 (Wash.1975), that the diminution in value of the house is the *measure of damage* flowing from the injury to *tangible* property. We find *Gauger* to be instructive. That court concluded there was property damage within the meaning of a general liability insurance policy where the seller represented that the barley seed he sold was spring barley but in fact it was a mixture of spring and winter varieties and the buyer had indicated he wished to plant only spring barley. The court based its conclusion that there was tangible property damage on the fact that the land would have been damaged by the seed mixture (a loss from its retained moisture, and its retained fertilizer, and from the erosion caused by weeds growing where the crop failed to grow). The court went on to note that the buyer's loss of profits was an injury to intangible property of the buyer. According to the court, the buyer's loss of profits could serve only as the measure of damage resulting from the injury to tangible property, *viz.*, damage to the buyer's land. *Id.* at 931, 538 P.2d at 566.

■ In the instant case, we agree with Western that the diminution in value to the Remeikises of the house could serve as the measure of any damage to tangible property resulting from the negligent inspection. This intangible measure of damages should not be confused with direct injury to tangible property. Significantly, here, unlike the situation in *Gauger*, the Remeikises' complaints do not allege damage to tangible property that would trigger the insurance policy and would make Hartford liable to defend and pay relevant damages, even if such damages are measured by the diminution in value of the house.

■ Western argues that the Remeikises claimed their damages included "loss of use" of their property. "Loss of use," under the terms of the policy, must result either from the physical destruction or injury of tangible property or from an "occurrence" which is defined as an accident resulting in bodily injury or property injury. We are unable to find any allegations in the complaint indicating that, as a result of Western's negligent inspection, the Remeikises lost the use of the house. We note that the Oregon Court of Appeals in *General Insurance Co. v. Western American Development,* 43 Or.App. 671, 603 P.2d 1245 (1979) construed the meaning of "loss of use" in an insurance policy substantially identical to the policy in the instant case. There, the complaints alleged that the insured had knowingly and recklessly misrepresented the nature and extent of an easement on certain mobile home lots. The complainants asserted that they reasonably relied on the insured's misrepresentation when they purchased the lots, and were damaged because the lots they purchased turned out to be worth less than

they anticipated because of the nature of the existing easement. The Oregon appellate court concluded that the damages claimed did *not* constitute allegations of the "loss of use of tangible property." *Id.* at 675, 603 P.2d at 1247. Here, the complaint by the Remeikises that the home they purchased has less value than they anticipated does not constitute allegations of a "loss of use" of a tangible property.

Western argues that at the least the *Remeikis* complaints contain allegations which are unclear as to whether they allege occurrences covered by the policy, and that under the rule that doubts are to be construed in favor of the insured,[1] the present uncertainties in the complaints must be resolved against Hartford. Specifically, Western points to language in the first complaint that "plaintiff sustained and *will continue to sustain* damage and pecuniary loss due to the termite damage to the aforesaid property." (Emphasis added.) Western notes that the amended complaint indicated that the damages included the cost of repairing the property, the reduced value of the property *"and other miscellaneous damages,* costs and expenses all as a direct result thereof." (Emphasis added.) According to Western, the open-ended prayers for damages are sufficiently broad to include damages arising from "property damage." The complaints in our view plainly allege that Western's misfeasance was its inaccurate report on the presence of termite damage in the house. The use of a general open-ended prayer for damages is standard practice in pleading. "It adds nothing concrete to the complaint. It is no substitute for the requirement that allegations of a covered claim in the complaint are essential to a determination that an insurer must defend." *County of Monroe v. Travelers Insurance Co.,* 100 Misc.2d 417, 419 N.Y.S.2d 410 (1979).

Finally, Western argues, based on *Keene Corp. v. Insurance Co. of North America,* 215 U.S.App.D.C. 156, 667 F.2d 1034 (1981), *cert. denied,* 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982), that Hartford is bound to defend because Western reasonably expected its general liability insurance policy to provide coverage for *all* liability arising out of its day-to-day operations. We would agree that if the policy were ambiguous, then the objective reasonable expectations of Western should guide an interpretation of the insurance contract. *See, id.* at 215 U.S.App.D.C. at 163–64, 667 F.2d at 1041–42. However, the policy is clear: it requires resulting damage to tangible property before coverage is triggered. In our view none was alleged here.

Accordingly, the judgment must be and is

*Affirmed.*

---

1. *S. Freedman & Sons, Inc. v. Hartford Fire Ins. Co., supra,* 396 A.2d at 197.