**SCOTTSDALE INSURANCE COMPANY,**
**Plaintiff/Respondent,**

v.

**Roger RATLIFF, d/b/a Statewide Pest Control, Defendant/Appellant.**

No. 69428.

Missouri Court of Appeals,
Eastern District,
Division Five.

July 9, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 15, 1996.

Application to Transfer Denied
Sept. 17, 1996.

Thomas M. Pavelko, Stern, Pressman & Soule, St. Louis, for appellant.

Cheryl A. Callis, Amy A. Endrizal, Kortenhof & Ely, P.C., St. Louis, for respondent.

CHARLES B. BLACKMAR, Senior Judge.

Scottsdale Insurance Company sought a declaration that it was not obliged to defend Roger Ratliff, doing business as Statewide Pest Control, in a suit filed by Terry and Rhonda Adams alleging that they sustained property damage because of a negligent termite inspection by Statewide. The trial court ruled in favor of the insurer concluding that the events charged in the Adams' petition did not constitute an "occurrence" within the meaning of the liability insurance policy issued to Ratliff. The case was submitted on a stipulation of facts, and this appeal presents only questions of law. We reverse and remand for further proceedings.

A liability insurer's duty to defend a suit against its insured is measured by the language of the policy and the allegations of the plaintiff's petition. *Butters v. City of Independence*, 513 S.W.2d 418, 424 (Mo. 1974). The Adams' amended petition charged that in December of 1987 they hired Statewide to make an inspection of a home they contemplated buying to determine whether there was infestation by wood boring insects, and on the same date they re-

ceived a negative report. On January 15, 1989, the Adams say they discovered termite damage while preparing to remodel their house. They assert that Statewide was negligent in its inspection and that this negligence resulted in damage as follows:

13. On January 15, 1988, the property ... had an appraised value in the sum of $38,000.00.

14. On August 13, 1990, the same property had the appraised value of $14,500.00.

15. The diminuation [sic] of the value of the said property in the sum of $23,500.00 on August 13, 1990 as to compared to the value of the said property on January 15, 1988 was caused by termite infestation and damage to the structure.

16. The damages specified in paragraph 15 were caused as the direct and proximate result of the negligence of the Defendant, STATEWIDE PEST CONTROL, INC. in failing to discover and report the infestation of termites during Defendant's inspection of Plaintiff's [sic] property on December 31, 1987.

It was also charged that Statewide acted recklessly. The prayer was for actual and punitive damages in the amount of $48,-500.00.

The governing policy was effective April 20, 1987 and expired April 20, 1988. It provides general liability coverage in language which seems typical of most such policies considered in recent cases. The insurer places particular emphasis on the definition of "occurrence" in the following terms:

an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.

It also highlights the definition of "property damage" as follows:

(1) physical injury to or destruction of tangible property which occurs during the policy period including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

These definitions are "boiler plate" contained in the printed portions of the policy. There is no policy language specially designed to apply to the insured's business except for the description, "Exterminators, including termite control—excluding the use of gas of any kind." Such attempts to fit myriad fact situations into a common mold present frequent problems of construction and much litigation.

The trial court relied strongly on *Western Exterminating Co. v. Hartford Accident and Indemnity Co.*, 479 A.2d 872 (D.C.App.1984), involving a similar claim under indistinguishable policy language. Pending against plaintiff were complaints seeking damages for diminution of value and cost of restoration on the grounds that plaintiff had issued a termite inspection report stating that a house was free from termite damage when in fact it had termite damage. The District of Columbia court assumed that the allegedly negligent inspection was an "accident" within the meaning of the policy, but pointed out that the only damage sought was for diminution of value of the residence on account of the infestation. *Id.* at 875. It concluded that this kind of damage was not an "occurrence" within the meaning of the policy because it did not result in "direct injury" to tangible personal property. *Id.* at 875–76. The policy, the court said, covered physical damage but not strictly economic losses. *Id.* The court rather brushed aside claims in the plaintiffs' complaint of "cost of repair," as a "general open-ended prayer for damages" which did not cure the failure to allege resulting damage to tangible property. *Id.* at 877.

*Western Exterminating* has not been followed in other termite inspection and report cases. In *Isle of Palms Pest Control Company v. Monticello Insurance Company*, 459 S.E.2d 318 (S.C.App.1994), likewise involving a general liability policy with indistinguishable language, the court found the insured's negligence in issuing a termite letter reporting no visible evidence of termite infestation was an "occurrence" covered under the policy. The court held that the complaint "clearly alleges an accident (the negligent inspection) which caused property damage (termite damage)." *Id.* at 319. It found that the failure to discover an active infestation resulted in continued termite damage and that continuing damage from that active infestation constituted the accident. *Id.* at 320. The alleged damage consisted of "costs of repair and efforts to stop the damage." *Id.* at 319.

In *Posing v. Merit Insurance Company*, 258 Ill.App.3d 827, 196 Ill.Dec. 335, 629 N.E.2d 1179 (3 Dist.1994), the court likewise struggled with substantially identical definitions in a general liability policy. Several claims against a company engaged in the business of termite inspection and extermination were joined in a single suit. *Id.* One claim in particular seems very much like the Adams' claim. The homeowners charged that there was a negligent inspection which failed to discover termite damage causing the homeowners to purchase a house with a diminished value resulting in "great inconveniences and costs to repair." *Id.* 196 Ill.Dec. at 338–39, 629 N.E.2d at 1181–82. The court rejected the insurer's claim that the alleged losses were only economic. *Id.* 196 Ill.Dec. at 340, 629 N.E.2d at 1184. It found the property's partial destruction by the pest infestation resulting from the allegedly faulty inspection was "a tangible, physical injury to property within the policy's definition of 'property damage'." *Id.* It found that the pest infestation was an "occurrence" within the policy's coverage. *Id.* The court held insurer had a duty to defend. *Id.* 196 Ill. Dec. at 341, 629 N.E.2d at 1185.

Other cases finding a similar duty are *Hurtig v. Terminix Wood Treating & Contracting Co., Ltd.*, 67 Haw. 480, 692 P.2d 1153 (1984) (negligent inspection and treatment led to termite damage to house) and *Fowler Pest Control and Insulation, Inc. v. Hartford Insurance Co. of Alabama*, 512 So.2d 88 (Ala.1987) (failure to discover significant existing damage). We believe that *Western Exterminating* and *Posing* are well considered and state sound principles, and we elect to follow these cases. In light of these termite cases, we do not believe that it would be profitable to consider cases from other states involving different kinds of damage claims.

The homeowners' amended petition would permit them to show that termite infestation was present at the time of the 1987 inspection, that the undiscovered termites continued to satisfy their appetites on the wood structures of the house during the remainder of the policy period and up to the time they came to the owners' attention, and that their depredations caused tangible damage to the structure. This showing demonstrates accident, occurrence, and property damage within the policy language. There is, especially, a claim of "continued or repeated exposure to conditions, which results in ... property damage." It could be found that the pleaded diminution in value was the result of physical damage, either leaving the property in a less desirable state or requiring expenditures for repair. By the ordinary meaning of words there is "property damage," and the policy definition is not at variance with the ordinary meaning.

The definitions of "occurrence" and "property damage" are ambiguous, in that they cannot be readily applied to a business such as the insured's without considering the surrounding circumstances. The insurer knew that the insured was engaged in the business of pest control, including inspection and extermination. The damage claims are of a kind that both the insurer and the insured might readily anticipate from the nature of that business. The petition might have been more explicit in detailing the alleged damage to the structure, but the insured, although obliged to defend the charges, has no control over the manner in which the petition is framed, and if the form of the petition was challenged, amendments would readily be allowed. If insurance companies do not intend to cover such claims when insuring termite exterminators, they might consider using language directed to the particular hazards and risks of that business rather than boiler plate. It is appropriate to resolve doubtful questions of construction in favor of the insured. *Chase Resorts, Inc. v. Safety Mutual Casualty Corporation*, 869 S.W.2d 145, 150 (Mo.App.1993).

 The insurer also asserts that it is not obliged to defend the claim because "the damage did not occur during the policy period, and, therefore, no occurrence resulted as defined by Scottsdale's policy definition," citing *Shaver v. Insurance Company of North America*, 817 S.W.2d 654 (Mo.App.1991). *Shaver* is not at all comparable. That case charged negligence in the design of a building by providing inadequate access space, as a result of which an employee of a maintenance firm was injured more than five years later. *Id.* The homeowners appear to charge in their petition that some damage, or at least some infestation, had taken place when the inspection was made and that because steps to control the damage were not taken, it progressed up to the time of discovery. Some of this damage necessarily occurred while the policy was in force, and this is sufficient to require a defense. *Shaver* does not support the claim that progressive damage does not occur until it is discovered. We are concerned at this stage of the case not with the insurer's ultimate responsibility to indemnify the insured, but with its duty to provide a defense. The presence of some insured claims in the homeowners' petition gives rise to a duty to defend, even though uninsured claims or claims beyond the coverage may also be present. *Butters*, 513 S.W.2d at 424–25.

The insurer argues, finally, that the insured's claim for attorney's fees is not supported in law. The trial court did not have the occasion to consider this claim because it found that the insurer had no duty to defend. The issue should be considered on remand. We consider at this stage only the duty to defend.

The judgment is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

CRANE, C.J., and AHRENS, J., concur.