**UNIVERSAL UNDERWRITERS INSURANCE CO., Plaintiff,**

v.

**LOU FUSZ AUTOMOTIVE NETWORK, INC., et al., Defendants.**

No. 4:02CV1647 CDP.

United States District Court, D. Missouri, Eastern Division.

Jan. 21, 2004.

Roger J. Heidenreich, Sonnenschein and Nath, LLP, St. Louis, MO, for Plaintiff.

Christopher L. Kanzler, Dunn and Miller, PC, Town and Country, MO, for Lou Fusz Automotive Network, Inc.

Douglas R. Sprong, Jeffrey H. Schultz, Steven A. Katz, Korein and Tillery, LLC, Belleville, IL, for Onsite Computer Consulting Services, Inc. and Stephenson Electric Company.

John D. Briggs, Steven H. Schwartz, Brown and James, PC, St. Louis, MO, for West Brothers Chrysler, Inc.

## MEMORANDUM AND ORDER

PERRY, District Judge.

This case involves interpretation of similar insurance contracts between plaintiff Universal Underwriters Insurance Company and defendants West Brothers Chrysler and the Lou Fusz Automotive Network. Universal Underwriters seeks a declaration that it does not have a duty to defend or indemnify any judgments entered against West and Lou Fusz in two state court class-action lawsuits that allege violations of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227. In the state suits, Onsite Computing and Stephenson Electric seek the full amount of TCPA statutory damages. Onsite and Stephenson are defendants here along with West and Lou Fusz.

The parties have filed cross-motions for summary judgment. Universal argues that under the policy terms it has no obligation to defend or indemnify West and Lou Fusz against the state suits. Onsite and Stephenson join here with their state-court opponents, West and Lou Fusz, to argue that the policies impose a duty to defend. They also argue that a determination of the duty to indemnify is premature until the state suits are resolved.

After full consideration of the policies and the facts alleged in the underlying state court cases, I find that Universal has a duty to defend West Brothers and Lou Fusz under the terms of the policies it issued to these defendants. Further, I need not now decide whether Universal is obligated to indemnify Lou Fusz and West Brothers because this question is premature, and its resolution will depend on the outcome of the underlying state actions. I will enter declaratory judgment in favor of the defendants on the duty to defend claim and will dismiss without prejudice the duty to indemnity claim.

## FACTS

Universal Underwriters Insurance Company insures two auto dealers, Lou Fusz Auto Network and West Brothers Chrysler under similar policies. On December 1, 2000, Universal issued policies numbered 190489B and 190494B to Lou Fusz. Policy 190489B was a multi-part insurance contract, providing for numerous first- and third-party coverages, including primary Garage coverage in the amount of $1,000,000. Under Part 980 of Policy 190494B, Universal provides umbrella insurance coverage to Lou Fusz.

On December 1, 2001, Universal issued policy 153159F to West Brothers. As with the Lou Fusz policy, the West Brothers policy was part of a multi-part contract of insurance providing numerous first- and third-party coverages, including primary Garage coverage in the amount of $300,000. West Brothers also carried umbrella coverage with Universal, in the amount of $3,000,000.

The insuring clause of the Garage coverage of the policies provides in part as follows:

**INSURING AGREEMENT**—WE will pay all sums the INSURED legally must pay as DAMAGES (including punitive DAMAGES where insurable by law) because of INJURY to which this insurance applies caused by an OCCURRENCE arising out of GARAGE OPERATIONS or AUTO HAZARD.

\* \* \* \* \* \*

WE have the right and duty to defend any SUIT asking for these DAMAGES. WE may investigate and settle any claim or SUIT WE consider appropriate. OUR payment of the limit shown in the declarations ends OUR duty to defend.

"Injury" under the policies is defined as:

Group 1—bodily injury, sickness; disease or disability (including death resulting from any of these) or damage to or loss of use of tangible property;

Group 2—mental anguish, mental injury, fright, shock, or humiliation, except when arising from DISCRIMINATION;

Group 3—false arrest, false imprisonment, wrongful eviction, wrongful detention, malicious prosecution, abuse of process, libel, slander, defamation of character, private nuisance (except pollution), invasion of rights of privacy or possession of personal property;

Group 4—plagiarism, misappropriation of advertising ideas or style, infringement of copyright, title, slogan or trademark;

Group 5—any error or omission in the ADMINISTRATION of YOUR profit sharing, pension or employee stock subscription plans or YOUR group life, group hospitalization or major medical, group accident and health, Worker's Compensation, unemployment, social security or disability benefits insurance;

Group 6—DISCRIMINATION OR WRONGFUL TERMINATION.

The policies do not further define the terms in these six groups.

"OCCURRENCE" is defined in the policies as follows:

"OCCURRENCE" with respect to COVERED POLLUTION DAMAGES, INJURY Groups 1 and 2 means an accident, including continuous or repeated exposure to conditions, which results in such INJURY or COVERED POLLUTION DAMAGES during the Coverage Part period neither intended nor expected from the standpoint of a reasonably prudent person.

With respect to INJURY Groups 3, 4, 5, and 6, OCCURRENCE means acts of the INJURED during the Coverage Part period which result in such INJURY.

Finally, the policies define "DAMAGES" as follows:

"DAMAGES" means amounts awardable by a court of law. With respect to INJURY Group 6, DAMAGES also means amounts awardable by administrative agencies. DAMAGES does not mean civil penalties, fines or assessments.

On September 26, 2002, defendants Onsite Computer Consulting Services, Inc., and Stephenson Electric Company filed lawsuits against Lou Fusz and West Brothers, respectively, in the St. Louis County Circuit Court. The state court petitions allege that Lou Fusz and West Brothers sent Onsite and Stephenson unsolicited faxes in violation of the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227. The suits were brought as class actions on behalf of all persons harmed by Lou Fusz's and West Brothers' alleged unlawful transmission of unsolicited advertisements. State court plaintiffs Onsite and Stephenson Electric requested injunctive relief and the full amount of statutory damages as set forth in 47 U.S.C. § 227(b)(3)(B) for each TCPA violation. 47 U.S.C. § 227(b)(3)(B)

provides that a person may bring "[a]n action to recover actual monetary loss or to receive $500.00 in damages for each such violation, whichever is greater...".

West Brothers contracted with Autoups, a company engaged in distribution of facsimile advertisements and other services, to distribute an advertisement. West Brothers claims that it did not know the identity of the recipients of the advertisement, even though it knew that the advertisement would be faxed. Further, West Brothers claims that it did not know that the advertisement would be sent to individuals or businesses that had not expressly invited receipt of such advertisements, such as Stephenson Electric.

Lou Fusz, in its answer to Onsite's state court petition, denies that it sent unsolicited advertisements. Lou Fusz further denied that it authorized anyone to send unsolicited advertisements on its behalf and alleged that it had permission to send the challenged faxes.

Lou Fusz and West Brothers tendered the underlying actions to Universal, and, although it denies it has a duty to defend these claims, Universal accepted the defense of these suits pursuant to a complete reservation of rights. Universal then filed this action in two separate cases, which I consolidated due to the substantial factual and legal overlap between the cases.

### SUMMARY JUDGMENT STANDARD

To determine whether to grant summary judgment, I will view the facts and inferences from the facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A party seeking summary judgment has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant has met this burden, the opposing party may not rest on the allegations in its pleadings but must, by affidavit or other evidence, set forth specific facts showing that a genuine issue of material fact exists. See Fed. R.Civ.P. 56(e).

At the summary judgment stage, I will not weigh the evidence and decide the truth of the matter, but rather must only determine if there is a genuine issue for trial. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. Rule 56(c) of the Federal Rules of Civil Procedure mandates entry of summary judgment against a party if, after adequate time for discovery, that party fails to make a showing sufficient to establish the existence of an essential element of the case that the party will have the burden of proving at trial. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548.

Universal asks in its complaint that I decide two issues: (1) does it have a duty to defend Lou Fusz and West Brothers, under the policies it issued, in the suits brought by Onsite and Stephenson Electric?, and (2) does it have a duty to indemnify any judgment that might be rendered against Onsite and Stephenson in the underlying lawsuits? All parties agree that if my answer to the first question is yes, then it would be premature to decide the second question before the facts are developed in the state court suits. Universal suggests that if I find there is no duty to defend, then I must also find there is no duty to indemnify.

Defendants point to four provisions from which Universal's duty to defend arises. Universal claims that the underlying TCPA violations are not injuries or occurrences under the policies and that the statutory damages sought in the state court

actions are civil penalties and/or intentional acts, which are not covered by the policies. Upon review of the state court pleadings and the terms of the insurance policies, I find that Universal has a duty to defend Lou Fusz and West Brothers.

The duty to defend in Missouri is broader than the duty to indemnify. *Lampert v. State Farm Fire and Casualty Co.*, 85 S.W.3d 90, 93(Mo.Ct.App.2002). The insurer's duty to defend arises when there is a *potential* liability set forth in the complaint, irrespective of facts later ascertained in the litigation. *Id.* Even if some claims in the complaint are not covered, the presence of insured claims triggers a duty to defend. *Scottsdale Ins. Co. v. Ratliff*, 927 S.W.2d 531, 534 (Mo.Ct.App. 1996).

 Interpretation of an insurance policy is a question of law. *Standard Artificial Limb, Inc. v. Allianz Ins. Co.*, 895 S.W.2d 205, 208 (Mo.Ct.App.1995). In construing the terms of an insurance policy, I must give the words "their plain meaning, consistent with the reasonable expectations, objectives, and intent of the parties." *Id.* Often the meaning of a disputed term is found in a standard English language dictionary. *Trans World Airlines, Inc. v. Associated Aviation Underwriters*, 58 S.W.3d 609, 622 (Mo.Ct.App. 2001). The contract should be construed as a whole; however, if it is open to different constructions, I will adopt the one most favorable to the insured. *Missouri Terrazzo Co. v. Iowa Nat. Mut. Ins.*, 566 F.Supp. 546, 552 (E.D.Mo.1983), *aff'd* 740 F.2d 647 (8th Cir.1984). Exceptions and limitations contained in insurance policies should be construed strictly against the insurer because "[a]n insurance contract is designed to furnish protection; therefore it will be interpreted to grant coverage rather than to defeat it." *Centermark Properties, Inc. v. Home Indem. Co.*, 897 S.W.2d 98, 100–01 (Mo.Ct.App.1995).

Universal claims that the underlying allegations are not covered for two reasons. First, it claims that the TCPA statutory damages are "civil penalties," which under the contracts it is not obligated to pay. Second, Universal claims that the transmission of unauthorized faxes is an "intentional act," which is also not a covered occurrence under the policies. These arguments are incorrect.

 The TCPA violations alleged by Stephenson and Onsite do not seek "civil penalties." The policies themselves do not define "civil penalties," but they do include a definition of "damages" as "amounts awardable by a court of law," which is further limited by the caveat that "damages" do not include "civil penalties, fines or assessments." Universal erroneously assumes that Onsite and Stephenson Electric are seeking $500 per unsolicited fax. The actual language of the complaints seek the "full amount of statutory damages" allowed under the TCPA, which provides for recovery of "actual monetary loss or to receive $500.00 in damages for each such violation, whichever is greater..." 47 U.S.C. § 227(b)(3). Thus, a remedy offered by the TCPA is actual damages.

No party argues that the award of actual monetary damages is somehow a "civil penalty." Accordingly, because the state court petitions potentially seek to recover actual monetary loss, potential "damages" are sought, which triggers the duty to defend. Further, statutory damages such as these, as the Supreme Court has noted in a different context, "serve to liquidate uncertain actual damages and to encourage victims to bring suit to redress violations." *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 376, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973) (upholding Truth In Lending Act's $1000 statutorily-prescribed damages provision); *see also Kenro, Inc. v. Fax Daily, Inc.*, 962 F.Supp.

1162, 1166 (S.D.Ind.1997). Interpreting a statutory remedy that covers the greater of actual damages or a liquidated amount as an excluded "civil penalty," as Universal urges, would be counter to the clear admonition of Missouri law to interpret insurance contracts to furnish, rather than to exclude, coverage. *See Centermark Properties, Inc.*, 897 S.W.2d at 100–01.

■ Universal's second exclusionary argument is that the transmission of the faxes was an intentional act, and therefore excluded by the policy. Both West Brothers and Lou Fusz deny intentionally transmitting or authorizing anyone else to transmit unsolicited faxes. Whether the acts were intentional is at best colorable. There is at least potential coverage, so Universal has a duty to defend.

■ Further, Universal asks that I infer more from the alleged facts than Missouri law allows. Missouri uses a subjective test to determine the insured's intent. *American Family Mutual Ins. Co. v. Franz*, 980 S.W.2d 56, 58 (Mo.Ct.App.1998). Intent to cause harm or damage can be inferred as a matter of law only if Lou Fusz and West Brothers' alleged acts carry the natural and intended consequences of causing harm. *See Angelina Casualty Co. v. Pattonville–Bridgeton Terrace Fire Protection District*, 706 S.W.2d 483, 484 (Mo.Ct. App.1986). The facts of this case are far removed from the cases cited by Universal in which such an inference was upheld. *See, e.g., State Farm Fire & Cas. Co. v. D.T.S.*, 867 S.W.2d 642 (Mo.Ct.App.1993) (child molestation); *American Family Mut. Ins. Co. v. Franz*, 980 S.W.2d 56 (Mo.Ct.App.1998) (pushing a child's hand into dog feces). I cannot say that as a matter of law that the conduct of Lou Fusz and West Brothers in sending business faxes through an intermediary carried the natural and probable consequence of causing harm.

My decision today is not novel. Two recent cases have found coverage of alleged TCPA violations under insurance agreements that cover "advertising injuries," notwithstanding arguments that alleged unsolicited faxes were excluded intentional acts or advertising injuries "arising out of the willful violation of a penal statute." *See Prime TV, L.L.C. v. Travelers Ins. Co.*, 223 F.Supp.2d 744, 752–53 (M.D.N.C.2002) (finding TCPA violations were an "advertising injury," the definition of which included "oral or written publication of material that violates a person's right of privacy"); *Hooters of Augusta, Inc. v. American Global Ins. Co.*, 272 F.Supp.2d 1365, 1375–77 (S.D.Ga.2003)(noting that "although the statutory damages do not closely correspond to actual damages, this fact does not convert a remedial statute into a penal one."). These cases, while interpreting narrower coverage provisions than those in this case, are persuasive in their analysis of the TCPA.

■ Defendants argue that the TCPA allegations triggered coverage under the Universal policy in four ways: (1) by invading the right of privacy of those who received the faxes, (2) by presenting a "private nuisance" under the policy, (3) by invading the right of those who received the faxes to their possession of personal property, and (4) by damaging or causing loss to tangible property.

Contrary to Universal's arguments, the legislative history of the TCPA as interpreted by the Eighth Circuit supports defendants' arguments that the alleged TCPA violations represent both private nuisances and the invasion of the right to privacy as they are commonly understood. In *State of Missouri v. American Blast Fax, Inc.*, 323 F.3d 649 (8th Cir.2003), the court noted that "Congress found telemarketing solicitations by a person to be

less of a nuisance or an invasion of privacy than artificial or prerecorded calls," and that "[a]rtificial or prerecorded messages, *like a faxed advertisement,* were believed to have heightened intrusiveness...". *Id.* at 657 n. 5 (quoting S.Rep. No. 102–178 at 4–5, *reprinted in* U.S.C.C.A.N. at 1972) (emphasis added). Further, noncommercial calls were "less intrusive to consumers." *Id.* at 655. There is no reason to doubt that Congress, when enacting the TCPA, recognized the same distinction when it distinguished between commercial and noncommercial faxes. *See also* S. Rep. No 102–178 at *1, 9 (1991), reprinted in 1991 U.S.C.C.A.N.1968 (Bill's purpose was to "protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home and to facilitate interstate commerce by restricting certain uses of facsimile (tax) [sic] machines and automatic dialers.").

Universal seeks to tie its definition for invasion of personal property to that of the common-law tort of conversion. Similarly, Universal urges that a private nuisance is the equivalent of the common-law cause of action for private nuisance. However, these definitions are inappropriate because they are not the plain and ordinary meaning of the respective terms, and the policy does not tie the disputed terms to the common-law causes of action.

Instead of the common-law definitions, the defendants offer certain dictionary definitions, which more preferably reflect the terms' plain and ordinary meaning. Lou Fusz argues that the plain and ordinary meaning of the term nuisance is an act, condition, thing or person causing trouble, annoyance, or inconvenience. *Webster's New Wold Dictionary, Second College Ed.,* 976 (1976). A private nuisance is such an act affecting a limited number of persons. *Id.* I agree with these definitions, and I also note that the legislative history and subsequent cases are replete with references to the nuisance posed by unsolicited faxes. *American Blast Fax,* 323 F.3d at 657 n. 5; *Destination Ventures v. FCC,* 844 F.Supp. 632, 637 (D.Ore.1994).

■ Defendants suggest that interference with "possession of personal property" in the policy is broader than common law conversion, which is the unauthorized assumption of the right of ownership over the personal property of another. *See, e.g., Green Valley Seed, Inc. v. Plenge,* 72 S.W.3d 601, 603 (Mo.Ct.App.2002). I agree. "Possession" is "the act of having or taking something into control" or "control or occupancy of property without regard to ownership." *Webster's Ninth Collegiate Dictionary* 918 (1991). While sending unauthorized faxes does not amount to assumption of the right of ownership to the fax machine, it represents assertion of control over the facsimile paper, ink and machine, without regard to ownership of the fax machine.

Because I have found that coverage is implicated by the invasion of privacy, private nuisance and interference with possession of personal property provisions of the policies, I need not evaluate the damage or loss to tangible property provisions of the policies. Universal has a duty to defend Lou Fusz and West Brothers in the state court lawsuits. Further, as the parties agree, resolution of the issue of whether Universal is under a duty to indemnify any judgment against Lou Fusz and West Brothers is premature. I will grant defendants Onsite and Stephenson Electric's motion to dismiss that claim without prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that Universal Underwriters' motion for summary judgment [# 30] is denied;

IT IS FURTHER ORDERED that defendants' motions for summary judgment [# 31, 35, 37] are granted as to Count I of plaintiff's complaints;

IT IS FURTHER ORDERED that defendants' motions to dismiss Universal Underwriters' second claim for relief [# 34] is granted and the claim regarding duty to indemnify is dismissed without prejudice.

A separate Judgment in accord with this Memorandum and Order is issued this same day.