COLUMBIA MUTUAL INSURANCE COMPANY, Appellant,

v.

Gary EPSTEIN d/b/a M & E Concrete Forms Company, Jeff Doerr and Connie Doerr, Respondents.

No. ED 89577.

Missouri Court of Appeals, Eastern District, Division One.

Dec. 4, 2007.

Sanford Goffstein, Lori R. Koch, St. Louis, MO, for appellant.

David C. Knieriem, Clayton, Kurt A. Voss, Kevin Richardson, Washington, MO, for respondents.

KENNETH M. ROMINES, Judge.

### Introduction

This is an insurance liability case. Here, we consider the oft-litigated question of whether the plaintiffs in the underlying suit alleged an "occurrence" and "property damage" as these terms are defined in the applicable Commercial General Liability policy (CGL). We also consider whether any of the exclusions to liability in the CGL policy apply to the underlying case. Finally, we consider whether the insurance company's actions in refusing to defend its insured were without reasonable cause or excuse, thus warranting statutory penalties and attorney's fees. We affirm in part and reverse in part.

### Factual and Procedural Background

In November, 2002, Jeff and Connie Doerr hired Gary Epstein, d/b/a M & E Concrete Forms Co., to pour a concrete foundation for a house they intended to build. Epstein obtained the concrete from a subcontractor, Boettcher. Soon after Epstein poured the concrete, the Doerrs learned the concrete foundation did not meet the Franklin County Building Code's minimum concrete strength requirements, and the Building Commissioner issued a "stop work order" on the Doerr's house. By this time, the sub-floor had been installed and the framing had commenced on the home. In order to correct the problem, the framing and sub-floor had to be removed and the foundation had to be removed and re-poured.

The Doerrs then filed suit against Epstein, claiming negligence and breach of contract. Epstein turned the suit over to his insurance company, Columbia Mutual ("Columbia"), to handle the claim. Columbia initially provided a defense, but then determined the underlying lawsuit was not covered under Columbia's policy. Columbia withdrew its representation of Epstein on 8 June 2004. On that same day, the court, after a hearing, ordered the Doerrs to file a new petition within 20 days. The Doerrs filed the second amended petition on 1 July 2004, alleging breach of contract, breach of implied warranty, and products liability. On 12 August 2004, David C. Knieriem entered his appearance on behalf of Epstein and on 3 September 2004, Epstein filed a third party petition in the Doerr lawsuit against Columbia, alleging vexatious refusal and bad faith. The court granted leave to file this petition on 17 September 2004. On 20 September 2004, Columbia initiated an action for declarato-

ry judgment, seeking a determination that it was not liable to defend or indemnify Epstein. Epstein filed a counter-claim against Columbia in the declaratory judgment action, alleging vexatious refusal to pay. All parties subsequently filed motions for summary judgment in the declaratory judgment action.

On 7 July 2005, the trial court denied Columbia's motion for summary judgment and granted both Epstein's and the Doerr's motions for partial summary judgment. Columbia appealed, but this Court dismissed the appeal because Epstein's counter-claim for vexatious refusal was still pending. Subsequently, on 30 December 2005, Judge Gael D. Wood entered judgment in favor of the Doerrs and against Epstein in the underlying lawsuit on Count III, products liability. The judge dismissed with prejudice the Doerr's cause of action against Boettcher and the Doerr's breach of contract and implied warranty claims. Later, on 28 February 2007, Judge David Hoven entered judgment against Columbia in the declaratory judgment action, finding that Columbia had breached its duty to Epstein to defend and indemnify in the underlying suit. This appeal follows the declaratory judgment action.

### Standard of Review

■■■ When considering appeals from summary judgment, the appellate court will review the record in the light most favorable to the verdict. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993); rule 74.04. The appellate court need not defer to the trial court's judgment as it is founded on the record submitted and the law; this makes appellate review essentially *de novo. Id.*

### Discussion

Columbia raises three issues on appeal. First, Columbia argues that it is under no obligation to defend or indemnify Epstein because the Doerrs do not allege an "occurrence" or "property damage" in their second amended petition. Second, Columbia asserts that if this Court finds that an "occurrence" was alleged, this Court should find that Columbia nevertheless should not be required to indemnify or defend Epstein because at least one of the three exclusions to coverage listed in the policy apply. Finally, Columbia contends that Epstein presented insufficient evidence to establish that Columbia's denial of coverage was without reasonable cause or excuse, and this Court should therefore reverse the entry of judgment for attorney's fees and statutory penalties.

### Duty to Defend or Indemnify

Columbia first argues that it is not obligated to defend or indemnify Epstein because the Doerrs do not allege an "occurrence" or "property damage" in their second amended petition.

■■■ The duty to defend arises whenever there is a potential or possible liability to pay based on the facts at the outset of the case and is not dependent on the probable liability to pay based on the facts ascertained through trial. 13 John A. Appleman & Jean Appleman, *Insurance Law and Practice,* section 4684 (rev.vol.1976). A liability insurer's duty to defend a suit against its insured is measured by the language of the policy and the allegations of the plaintiff's petition. *Butters v. City of Independence,* 513 S.W.2d 418, 424 (Mo. 1974). If the complaint alleges facts that give rise to a claim potentially within the policy's coverage, the insurer has a duty to defend. *Butters,* 513 S.W.2d at 424; *Zipkin v. Freeman,* 436 S.W.2d 753, 754 (Mo. banc 1968).

The Columbia policy issued to Epstein was a Commercial General Liability policy (CGL). The policy insured Epstein for property damage for which he becomes legally obligated to pay because of "bodily injury" or "property damage" if the "bodily injury" or "property damage" was caused by an "occurrence," or an "accident."

### 1. "Occurrence"

Columbia claims it is not obligated to defend or indemnify Epstein because the Doerrs do not allege an "occurrence" in their second amended petition. This claim relies completely on the proposition that breaches of contracts are not "occurrences" or "accidents."

Columbia argues in its brief that "it is manifestly clear that a claim ... that arises out of a breach of a contractual obligation ... does not constitute an 'accident' or an 'occurrence' under a CGL Policy such as Columbia's." Columbia relies entirely on *American States Ins. Co. v. Mathis,* 974 S.W.2d 647 (Mo.App. E.D. 1998) to support this argument. In *Mathis* this Court expressly held that "breaches of contract are not 'accidents' or 'occurrences.'" *Mathis* at 650.

Columbia doggedly contends that the underlying case is solely a breach of contract case. Therefore, they argue that under *Mathis,* the Doerrs have not alleged liability that would trigger Columbia's duty to defend or indemnify. In so contending, Columbia argues that the legal theory actually pled against the insured is immaterial in determining liability; rather it is the underlying facts which control. Columbia asserts that because the products liability claim in the second amended petition is based on the same facts upon which the breach of contract claim was based, the claim is actually a breach of contract claim.

■ We disagree. First, the Doerrs successfully alleged facts supporting a products liability claim in Count III of their second amended petition. Two trial courts so found in their 30 December 2005 and 28 February 2007 judgments. Upon review of the Doerr's second amended petition *de novo,* we agree. To make a submissible case for products liability, plaintiffs have to prove the following elements, taken from Restatement (Second) of Torts, section 402A: (1) the defendant sold a product in the course of its business; (2) the product was then in a defective condition, unreasonably dangerous when put to a reasonably anticipated use; (3) the product was used in a manner reasonably anticipated; and (4) the plaintiff was damaged as a direct result of such defective condition as existed when the product was sold. *Lay v. P & G Health Care, Inc.,* 37 S.W.3d 310, 325 (Mo.App. W.D.2000) (citing *Keener v. Dayton Electric Manufacturing Co.,* 445 S.W.2d 362, 364 (Mo.1969)).

The Doerrs sufficiently allege facts that satisfy all the elements of a products liability claim. In their second amended petition, they allege:

7. On or about November 13, 2002, Plaintiffs entered into an oral contract with Defendant M & E to pour a foundation for Plaintiffs' new home in Franklin County.

8. Defendant M & E purchased the concrete for the foundation from Defendant Boettcher.

9. The original foundation was poured on or about November 13, 2002.

10. On or about December 10, 2002, Plaintiffs paid Defendant M & E the sum of $18,903.00 for the concrete foundation work for Plaintiffs' new home.

11. After the foundation was poured, Plaintiff commenced framing and installation of the sub floor for the new home.

44. At all times mentioned in this Petition, the concrete purchased from Defendants M & E and Boettcher was defective as to design, manufacture and warnings, causing the concrete to be in a dangerous and defective condition, rendering it unsafe for its intended use.

45. As a direct and proximate result of the dangerous and defective condition of the concrete, as described above, Plaintiffs have been damaged in the following sums as a result of the defective foundation including removing the old concrete foundation, framing and sub-floor, and the pouring of a new concrete foundation, re-framing, and installing another sub-floor.

The Doerr's petition goes on to list the expenses incurred for removing and replacing the foundation and sub-floor and framing. The Doerrs sufficiently alleged a products liability claim in Count III of their second amended petition.

Second, because the Doerr's breach of contract claim and implied warranty claim against Epstein were dismissed with prejudice on 30 December 2005, the only claim this Court is to consider is Count III—products liability.

Because *Mathis* is purely a breach of contract case, it is distinguishable from the present case. In *Mathis,* the plaintiff set up the petition to state that the defendant had failed to meet some contract terms, whether intentionally or negligently. The claim was specifically delineated in *Mathis* as a failure of the contract. *Mathis,* 974 S.W.2d at 650. In contrast, the claim identified in the underlying petition in the instant suit is that a defective product was delivered in a dangerous condition to the Plaintiffs. The underlying suit here is a products liability case, not a breach of contract case. Accordingly, *Mathis* does not apply. Nor do the other myriad of cases cited by Columbia apply here because they are either not controlling in this jurisdiction, and/or they are based on breach of contract claims, faulty workmanship claims and/or negligence claims, whereas the sole claim here is for products liability.

■ Having identified the sole claim in the present case, we now turn to the issue of whether the Doerrs alleged an "occurrence" or an "accident" in their second amended petition. Fortunately, this issue is easily determined. The CGL policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

■ Columbia's CGL policy does not define "accident;" however, its common meaning is, "An event that takes place without one's foresight or expectation; an undesigned, sudden and unexpected event. Hence, often, an undesigned and unforeseen occurrence of an afflictive or unfortunate character; a mishap resulting in injury to a person or damage to a thing; a casualty; as, to die by an accident." *West v. Jacobs,* 790 S.W.2d 475, 477 (Mo.App. W.D.1990) (overruled on other grounds). An "accident" is not necessarily a sudden event; it may be the result of a process. *White v. Smith,* 440 S.W.2d 497 (Mo.App. 1969). The focus of the definition is the insured's foresight or expectation of the injury or damages. *Id.*

The facts alleged in the Doerr's second amended petition would have allowed them to show that Epstein sold and delivered to the Doerrs concrete for a basement foundation, that through no fault of Epstein, the concrete was defective, that the defective nature of the concrete damaged the sub-floor and framing of the home in that it all had to be torn down and replaced, and that neither the defect in the concrete nor the damage to the home was foresee-

able to Epstein. We find that the Doerrs allege an "occurrence" or an "accident" in their second amended petition.

### 2. "Property Damage"

■ Columbia also argues that the Doerrs fail to allege property damage in their second amended opinion. "Property Damage," as defined in Columbia's policy, means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it, or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

In its reply brief, Columbia claims that if the defective concrete had injured someone or something, then the liability policy issued by Columbia would have provided coverage. But, according to Columbia, "the Second Amended Petition contained no facts that would show that the defective foundation caused damage to any other property."

We disagree. Upon review of the record, we find that damage to other property appears to be exactly what the Doerrs allege in Count III of their second amended petition. Line 45 reads:

"As a direct and proximate result of the dangerous and defective condition of the concrete, as described above, Plaintiffs have been damaged in the following sums as a result of the defective foundation, including removing the old concrete foundation, *framing and sub-floor*,[1] and the pouring of a new concrete foundation, re-framing, and installing another sub-floor."

The sub-floor and framing are damaged by the defective concrete foundation in that it effectively renders them useless. Like the defective foundation, the sub-floor and framing must be removed and replaced. Under section (a) of the policy, there is property damage if there is loss of use of that property. The Doerrs allege such loss of use. Two trial courts came to the same conclusion in their 30 December 2005 and 28 February 2007 judgments, and we find no evidence in the record compelling us to find otherwise.[2]

### Exclusions

Columbia argues that if this Court finds that an "occurrence" was alleged, Columbia nevertheless is not required to indemnify or defend Epstein because at least one

---

1. Emphasis added.

2. The definitions of "occurrence" and "property damage" are boilerplate and are therefore ambiguous, in that they cannot be readily applied to a business such as Epstein's without considering the surrounding circumstances. Columbia knew that Epstein was engaged in the business of laying concrete. The claims of damage are of a kind that both Columbia and Epstein might readily anticipate from the nature of that business. *Scottsdale Ins. Co. v. Ratliff*, 927 S.W.2d 531, 534 (Mo.App. E.D.1996). While the second amended petition might have been clearer explaining the alleged damage to the home, Epstein, although obliged to defend the charges, has no control over the framing of the petition. Further, this Court notes that had Columbia chosen to challenge the form of the petition, it might have continued to defend the claim and demanded more specific pleadings. If Columbia did not intend to cover such claims when insuring concrete layers, it might have considered using language directed to the particular hazards and risks of that business rather than boilerplate. *Id.* It is appropriate to resolve doubtful questions of construction in favor of the insured. *Chase Resorts, Inc. v. Safety Mutual Casualty Corporation*, 869 S.W.2d 145, 150 (Mo.App. E.D. 1993).

of three exclusions to coverage apply. These exclusions are:

l. **Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

m. **Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products—completed operations hazard" This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

n. **Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured arising out of:

1. a defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

2. a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

 We reiterate that the duty to defend arises whenever there is a potential or possible liability to pay based on the facts at the outset of the case and is not dependent on the probable liability to pay based on the facts ascertained through trial. 13 John A. Appleman & Jean Appleman, *Insurance Law and Practice*, section 4684 (rev.vol.1976). It is incumbent upon Columbia, as the insurer, to prove the applicability of an exclusion. *Century Fire Sprinklers, Inc. v. CNA/Transportation Ins. Co.*, 23 S.W.3d 874, 877 (Mo.App. W.D.2000).

 Upon review of the entire record, we find that exclusion (*l*) is the only exclusion with possible application to this case. Exclusion (m) does not apply because the Doerrs make no claim against Epstein as to his "work." Their only claim concerns the "product" Epstein provided them. Neither does exclusion (n) apply to this case, because the Doerrs allege that the sub-floor and framing were not merely impaired, rather they were physically injured due to a defect in the product. Thus, exclusion (n) is precluded.

 Exclusion (*l*), however, applies because, as Columbia argues, the foundation is either Epstein's work or Epstein's product. The policy defines "Your product" as "Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by you...." Epstein, as a concrete layer, agreed to provide and indeed provided a concrete foundation for the Doerrs in exchange for an agreed upon price. This fits squarely within the definition of "Your product" in Columbia's policy with Epstein. Thus, we find that exclusion (*l*) applies. Accordingly, Columbia is not liable for damages to Epstein's product, or in other words, the concrete foundation. Nevertheless, Columbia remains liable for alleged damages that were not Epstein's product; namely, costs associated with removing and replacing the sub-floor and framing. Thus, on this point, we reverse and remand to the trial court with instructions to determine those costs.

*Statutory Penalties and Attorney's Fees for Refusal to Defend*

Columbia argues that Epstein presented insufficient evidence to establish that Columbia's denial of coverage was without reasonable cause or excuse and that Co-

lumbia exhibited a recalcitrant or vexatious attitude. We disagree. Section 375.420 R.S.Mo. allows for penalties and attorney's fees if it appears from the evidence that the insurance company has refused to pay for their insured's loss without reasonable cause or excuse.

■■■■ "When there is an open question of law or fact the insurer may insist upon a judicial determination of those questions without being penalized." *Hocker Oil Co., Inc. v. Barker–Phillips–Jackson, Inc.* 997 S.W.2d 510, 523 (Mo.App. S.D.1999) (quoting *Wood v. Safeco Ins. Co. of America,* 980 S.W.2d 43, 55 (Mo.App. E.D.1998)). The existence of a litigable issue, however, does not preclude a vexatious penalty where there is evidence the insurer's attitude was vexatious and recalcitrant. *DeWitt v. American Family Mut. Ins. Co.,* 667 S.W.2d 700, 710 (Mo. banc 1984). "Direct and specific evidence to show vexatious refusal is not required, the jury may find vexatious delay upon a general survey and a consideration of the whole testimony and all the facts and circumstances in connection with the case." *Id.*

■■■ We find that Columbia exhibited a recalcitrant and vexatious attitude in its denial of coverage of Epstein's claim. Columbia initially defended Epstein in the Doerrs' claim against Epstein. Then on 1 June 2004 Columbia sent a letter to Epstein, advising him that it would abandon the defense six days later. On 8 June 2004, the same day Columbia ended its representation of Epstein, the Court ordered the Doerrs to file a new petition 20 days hence. Epstein argues in his brief that on 8 June 2004, Columbia Mutual knew that the petition on which it based its denial of coverage would be changed and

that Epstein would be forced to hire his own lawyer in order to respond to the forthcoming second amended petition.

In response to this, Columbia does not deny that it knew the original petition would be changed. Nor does Columbia deny that it knew that a second amended petition was forthcoming—Columbia simply notes Epstein's failure to cite to the record. Based on this record, this Court finds that Columbia was aware of a forthcoming second amended petition and made little to no effort to acquire a copy to determine whether there was coverage.[3] The record shows that Columbia in fact received the second amended petition at some point, but made no effort to determine whether there might be coverage until approximately six weeks had passed after the petition was filed. Columbia apparently made up its mind regarding coverage despite what the second amended petition might have alleged. As the trial court comments, Columbia's first duty was to its insured, and it precipitously abandoned him. We view Columbia's actions as evidence of a recalcitrant and vexatious attitude. Therefore, we affirm the trial court's award on this point.

### Conclusion

Upon review of the record, we find that the Doerrs alleged an "occurrence" in their second amended petition. We also find that exclusion (*l* ) applies—thus excluding liability for the costs associated with Epstein's "product." We further find that Columbia exhibited a recalcitrant and vexatious attitude. Accordingly, we affirm on the issues of "occurrence" and statutory penalties and attorney's fees for Columbia's refusal to defend, and reverse and remand on the exclusion issue, with in-

**3.** Indeed inasmuch as Columbia does not claim that their insured did not provide a copy of the amended petition to them, we can assume Columbia received a timely copy.

structions to adjust the judgment in accordance with this opinion.

AFFIRMED IN PART, AND REVERSED AND REMANDED IN PART.

KATHIANNE KNAUP CRANE, P.J., and ROBERT G. DOWD, Jr., J., concur.